## URBAN v. BAGBY et al. (No. 8747.)*

(Court of Civil Appeals of Texas. Galveston.
May 27, 1926. Rehearing Denied
June 17, 1926.)

**I. Courts ⟨⟩91(I).**

Opinion contrary to holding of another Court of Civil Appeals, approved by Supreme Court by refusal to grant writ of error, must be withdrawn and appeal reconsidered on other questions presented.

**2. Vendor and purchaser ⟨⟩260(2)—Vendor expressly reserving lien in deed retained title superior to lien of judgment against vendees' grantee.**

Vendor expressly reserving vendor's lien in deed retained title superior to lien of judgment against vendees' grantee while purchase-money notes remained unpaid, and could assert such title and repossess land on default in payment thereof by obtaining reconveyance in satisfaction of notes.

**3. Vendor and purchaser ⟨⟩260(2)—Holder of lien of judgment against vendees' grantee is in no better position than vendees or judgment debtor to assert claim to land.**

Holder of lien of judgment against one to whom grantees in deed expressly reserving ven-

dors' lien conveyed before payment of purchase-money notes is in no better position than vendees or their grantee to claim land as against vendors to whom vendees reconveyed in satisfaction of notes.

**4. Fraudulent conveyances ⟨⟩310.**

Finding that value of land, when reconveyed to vendors, did not exceed indebtedness due them, negatives bad faith.

**5. Vendor and purchaser ⟨⟩260(2)—Rights of vendor reserving express lien in deed are superior to those of mortgagee or lien holder entitled only to subject property to sale for payment of his indebtedness.**

Generally, holder of second lien has absolute right, not dependent on value of property, to foreclose lien and have property sold so that he may buy it and thereafter redeem from purchaser under prior foreclosure, but rights of vendor reserving express lien in deed to secure payment of purchase-money notes are superior to those of mortgagee or lien holder, whose only right in property is to subject it to sale for payment of his indebtedness.

**6. Appeal and error ⟨⟩151(2)—Judgment creditor not tendering amount of indebtedness of debtor's grantors to their vendors cannot complain of adverse judgment in trespass to try title.**

Judgment creditor, having only right to redeem by tendering full amount of indebtedness of judgment debtor's grantors to their vendors, cannot complain of judgment against him in trespass to try title, in absence of such tender.

**7. Judgment ⟨⟩762.**

Where vendees' grantee had no notice of suit wherein judgment was obtained against him, judgment creditor has no lien on land, unless rule protecting judgments valid on face from collateral attack renders judgment binding on parties to whom vendor conveyed after reconveyance by original vendees.

**8. Judgment ⟨⟩707.**

One who is neither party, nor privy of party, to suit, is not bound by judgment.

**9. Judgment ⟨⟩443(I), 511—Judgment procured by fraud may be declared void as between parties and privies in proceeding therefor, but strangers may collaterally attack it.**

Fraud in procuring judgment does not render it absolutely void, but only voidable in proceeding instituted for such purpose in proper time, as between parties and privies, but strangers to proceeding may collaterally attack judgment whenever relied on to affect their rights.

**10. Judgment ⟨⟩678(I).**

"Privity" is mutual or successive relationship to same property rights, and all persons whose succession to property rights adjudicated was derived through parties to action and accrued subsequent to commencement thereof are "privies" to judgment within rule as to its conclusiveness.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Privity —Privy.]

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted October 20, 1926.

**11. Judgment ⟨key⟩682(1).**

Successors to title, conveyed more than two years before judgment against grantor without notice of suit in which recovered, are not bound by judgment, though conveyance was void as against judgment creditor under Rev. St. 1911, art. 6824.

**12. Fraudulent conveyances ⟨key⟩154(1)—Vendor and purchaser ⟨key⟩233.**

Rev. St. 1911, art. 6824, prevents holder of title under unrecorded deed from asserting it against grantor's creditors and subsequent purchasers for value without notice, but does· not otherwise limit his right and title.

Appeal from District Court, Jackson County; John M. Green, Judge.

Action by J. W. Bagby and others against Herman Urban and another, in which W. E. Appelt and another were made parties defendant. Judgment for plaintiffs, and defendant Urban appeals. Affirmed.

Thos. W. Thompson, of Giddings, and Jno. T. Vance, of Edna, for appellant.

Rose & Sample, of Edna, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title to a tract of 176 acres of land in Jackson county, brought by J. W. Bagby, E. T. Rose, and S. G. Sample against Herman Urban and C. J. Williamson.

The defendant Urban answered by pleading a judgment lien upon the land obtained against plaintiffs' remote vendor, C. J. Williamson. The answer further avers:

"This defendant alleges that W. E. Appelt and Frank Appelt, both residing in Jackson county, Tex., are asserting some kind of claim against said land antagonistic to the rights of this defendant therein; that on or about the 29th day of September, 1923, they executed and delivered to plaintiffs a deed to said land; that said deed stipulated that a vendor's lien is retained against said land in favor of said Appelts to secure the payment of certain notes described in said deed, all of which appears of record in volume 48, p. 254, of the deed records· of Jackson county, Tex.; that said Appelts may have the right to enforce the payment of said notes out of said land, after this defendant's judgment is fully satisfied, but that in truth and fact this defendant's claim and lien against said land is a first and superior lien against the same, as hereinbefore alleged; and that therefore the said W. E. Appelt and Frank Appelt are proper and necessary parties to this suit, and should be joined as parties· defendant herein so that the rights of all parties claiming an interest in said land may be properly adjudicated and finally settled.

"Wherefore this defendant prays the· court that said W. E. Appelt and Frank Appelt be cited to appear and answer in this cause what interest they claim in said land, if any, and that upon trial hereof this defendant have judgment foreclosing his judgment lien against the land described in plaintiffs' petition, and that he have such other relief as in law or in equity he may be entitled to."

The Appelts filed an answer and cross-action in which they pleaded in substance that they had obtained title to the land in consideration of the cancellation of vendor's lien notes secured by an express vendor's lien, which was prior and superior to the lien asserted by the defendant Urban, and that they had conveyed the land to plaintiffs by deed of general warranty for a consideration of $2,640, a large part of which is unpaid and is secured by a vendor's lien upon the land. They further pleaded that the judgment in favor of defendant Urban against J. C. Williamson, under which the defendant is claiming a lien on the land, was obtained in a suit in which there was no service of citation upon Williamson and no appearance by him, and said judgment is therefore void and its record gave defendant no lien upon the land. They prayed that judgment be rendered in favor of plaintiffs for the title and possession of the land and that defendant Urban take nothing under his asserted lien, and in the alternative they prayed that their vendor's lien be held superior to any lien found to exist in favor of the defendant Urban.

The defendant Williamson made no answer.

The plaintiffs, by supplemental petition, set up the invalidity of the judgment pleaded by defendant Urban upon the grounds set up in the answer and cross-action of defendants Appelt, above stated.

The trial in the court below without a jury resulted in a judgment in favor of plaintiffs.

The following statement of the material facts disclosed by the record is taken from findings of fact filed by the trial judge, at the request of appellant:

On the 2d day of December, 1913, W. E. and Frank Appelt, who then held title to the land in fee simple, conveyed it to H. A. Cline, T. N. Mauritz, and Fred Mauritz by deed which was recorded in the deed records of Jackson county on December 5, 1913. The consideration for this conveyance was $200 cash and eight promissory notes .of even date. with the deed, executed by the grantees, for the· sum of $415 each, payable respectively in 1, 2, 3, 4, 5, 6, 7, and 8 years from date, with 6 per cent. interest per annum, and each containing the usual 10 per cent. attorney's fee stipulation. The fifth and sixth of these notes were payable to W. E. Appelt and the other six to Frank Appelt. To secure the payment of the notes a vendor's lien was expressly retained in the deed conveying the land.

Before the maturing of any of these notes, the Appelts transferred and assigned them, with the lien retained in the deed, to F. C. Neuhaus, and by indorsements thereon guaranteed the payment of each and all of the notes.

After receipt of this deed, the grantees therein, on the same day, conveyed the land to J. C. Williamson by deed duly executed, but never recorded, and which has been lost or destroyed and cannot now be found. As a part of the consideration for this conveyance, Williamson assumed the payment of the eight notes above described and executed four additional notes in favor of his grantors for the sum of $308 each, payable in 1, 2, 3, and 4 years, respectively.

On December 6, 1913, Williamson executed a deed of trust on this and other lands to secure the payment of a note for $2,000 in favor of T. N. and Fred Mauritz. This instrument was recorded in the proper records of Jackson county on January 7, 1914. The lien created by this deed of trust was discharged and a release thereof executed by T. N. and Fred Mauritz on November 30, 1914, and duly recorded on October 8, 1918.

On the 20th day of April, 1914, J. C. Williamson, joined by his wife, by deed executed and delivered, conveyed the 176 acres of land to W. C. Horner and V. C. Storey. This deed was acknowledged on October 8, 1918, and duly recorded on same day. The consideration for this conveyance was the assumption by the grantees of the vendor's lien notes before described and the delivery to the grantors of $312 cash, or of personal property valued at that amount, and a note for $600 executed by the grantees in favor of grantors, payable December 1, 1916, and secured by a vendor's lien upon the land. This note was later paid by W. C. Horner after it had been transferred by the payees therein.

On January 6, 1915, V. C. Storey conveyed his interest in the land to Horner in consideration of the assumption by the latter of all of the indebtedness against the land, evidenced by the notes before mentioned. This deed was duly recorded on October 8, 1916.

On October 4, 1918, T. N. and Fred Mauritz conveyed the 176 acres of land to W. C. Horner by warranty deed. This deed was delivered on October 7 and filed for record October 8, 1918.

Prior to October 25, 1923, Horner had paid the $600 note given by him and Storey to Williamson, and four notes executed by Williamson in favor of H. A. Cline, T. N. and Fred Mauritz, and on the 17th of October, 1923, he obtained a release from T. N. and Fred Mauritz of the vendor's lien securing said notes; but this release was not recorded. We here copy the further findings of the court:

"That prior to the 25th day of April, 1923, W. C. Horner paid off in full vendor's lien notes Nos. 1, 2, and 3 and all interest accrued on notes Nos. 4, 5, 6, 7, and 8 up to December 2, 1920, of the series of eight vendor's lien notes above referred to, dated December 2, 1913, and that on April 28, 1923, the said W. C. Horner had not paid the balance owing on said notes Nos. 4, 5, 6, 7, and 8 of said series of notes, to wit, the principal and interest from December 2, 1920.

"(9) That on the 5th day of October, 1916, in the county court of Lee county, Tex., defendant Herman Urban recovered a judgment against E. O. Burton, J. L. Burton, and C. J. Williamson in the sum of $811.25 with 6 per cent. interest thereon from date of judgment, and for costs of suit, said cause being No. 519 on the docket of said court, wherein Herman Urban was plaintiff and said E. O. Burton, J. L. Burton, C. J. Williamson, and others were defendants. That said judgment was recorded in volume C, pages 212 and 213, of the civil minutes of said court. That on the 15th day of November, 1916, said Urban caused an execution to be issued in said cause by the clerk of the county court of Lee county, Tex., and placed same in the hands of the sheriff of Lee county, Tex., directing him to seize the property of the defendants E. O. Burton, J. L. Burton, and J. C. Williamson in Lee county, Tex., and sell the same in satisfaction of said judgment, and that said execution was duly returned into said court on the same day of its issuance, with the sheriff's return thereon to the effect that he found no property of said defendants in said county subject to execution and that said execution and return were duly recorded in Volume A, page 80, of the execution docket of the county court of Lee county, Tex. That on the 24th day of October, 1916, at the instance of the said Herman Urban, the county clerk of Lee county made and certified an abstract of said judgment, which was at the instance of the said Herman Urban recorded in Jackson county, Tex., on the 11th day of December, 1916, in Volume 2, p. 78, of the abstract of judgment records of said county, and the names of the parties to said judgment were by the clerk of Jackson county indexed and cross-indexed. That the costs in said cause amounted to $48.85. That said judgment and costs thereon had not been paid at the time said abstract of judgment was prepared and certified to, and that no evidence has been offered in this case sufficient to authorize a finding by this court as to whether or not any part of said judgment or costs has been paid since the certification of said abstract of judgment.

"(10) That on or about the 20th day of October, 1919, the aforesaid C. F. Neuhaus died intestate, and that on or about the 17th day of December, 1919, W. O. Neuhaus, E. A. Neuhaus, and A. M. Neuhaus qualified as administrators of his estate, and continued to act as such up to and including the 5th day of May, 1923. That on the 3d day of December, 1921, W. C. Horner was unable to pay note No. 4 of the aforesaid series of eight vendor's lien notes and the annual interest due on notes Nos. 5, 6, 7, and 8 of said series, and in order to keep their obligation as indorsers of said five vendor's lien notes defendants W. E. Appelt and Frank Appelt paid to the administrator of the estate of F. C. Neuhaus, deceased, the amount of said note No. 4 then owing and one year's interest on said notes 5, 6, 7, and 8, amounting to $539.50, and took back from the said administrator said note No. 4. That on the 25th day of November, 1922, the said W. C. Horner executed and delivered to defendant W. E. Appelt and the estate of F. C. Neuhaus, deceased, an extension agreement in writing bearing said date, and thereafter duly filed on November 28, 1922, in the office of the county clerk of Jackson county, for record, and by him duly re-

corded in Volume 47, p. 99, of the deed records of Jackson county, by the terms of which extension agreement the dates of maturity of notes Nos. 4 and 5 of the series of eight vendor's lien notes aforesaid were extended to the 2d day of June, 1923, and said notes were renewed and lien on the aforesaid land declared extended to the 2d day of June, 1923, and said notes were by the said W. C. Horner acknowledged as a valid subsisting debt and the lien securing them as a valid subsisting lien on said land, and the said W. C. Horner thereby obligated himself to pay the holders of said note the sums of money therein specified according to their tenor and effect on the 2d day of June, 1923. That on the 2d day of December, 1922, the said W. C. Horner was unable to pay note No. 5 of the aforesaid series of eight vendor's lien notes to the administrators of the estate of F. C. Neuhaus, deceased, or the annual interest then due on notes Nos. 6, 7, and 8 of said series of eight notes. at which time, in order to make good their indorsement on said several notes, the defendants W. E. Appelt and Frank Appelt paid off said note No. 5 of said series and the annual interest due on said notes Nos. 6, 7, and 8 of said series amounting to $514.60, and took over from the administrators of the estate of F. C. Neuhaus, deceased, said note numbered 5 aforesaid.

That on the 28th day of April, 1923, the said W. C. Horner owed said notes Nos. 6, 7, and 8 of said series of eight notes with interest thereon from December 2, 1922, to the administrators of the estate of F. C. Neuhaus, deceased, and the holders of said notes were then demanding of the said W. C. Horner and of the defendants Frank Appelt and W. E. Appelt the balance due and owing on said notes, and that at said time the said W. C. Horner was owing to the said W. E. Appelt and Frank Appelt the aforesaid notes Nos. 4 and 5 of said series with interest thereon from December 2, 1920, and interest on said notes Nos. 6, 7, and 8 from December 2, 1920, to December, 1922, and that at that time the said W. C. Horner also owed past-due taxes, interest, penalties, and costs thereon to the state of Texas, and county of Jackson, and the officers charged with the collection thereof to the amount of $204.60, and also owed 1923 taxes to accrue on said land, not then due, to the amount of about $36.26. That the said W. C. Horner was unable to pay the aforesaid indebtedness or any part thereof, and that on the 28th day of April, 1923, in order to make good their obligation as indorsers on the aforesaid notes Nos. 6, 7, and 8, the said Frank Appelt and W. E. Appelt paid to the said administrators of the estate of F. C. Neuhaus, deceased, the amount of principal and interest owing on said notes, the same being $1,275.30, and took over said three notes, whereupon defendant W. C. Horner delivered to the said W. E. Appelt and Frank Appelt a deed to the aforesaid land dated April 9, 1923, by the said W. C. Horner duly executed and acknowledged on April 25, 1923, and which deed was made, executed, and delivered in consideration of the satisfaction and surrender to the said W. C. Horner by the said W. E. Appelt and Frank Appelt of the aforesaid notes Nos. 4, 5, 6, 7, and 8 of said series of eight notes, and that the payment of the taxes, penalties, interest, and costs then owing and past due on said land and the payment of taxes to become due on said land for the year 1923 was not mentioned by the parties to said deed. That said notes Nos. 4, 5, 6, 7, and 8 were on the 28th day of April, 1923, turned over by the said W. E. Appelt and Frank Appelt to the said W. C. Horner. That the deed last aforesaid was by the said Appelts filed for record on May 1, 1923, in the office of the county clerk of Jackson county, and by him duly recorded in Volume 47, p. 565, of the deed records of said county. That on or about the 1st day of May, 1923, in order to remove the lien of the county of Jackson and state of Texas against said 176-acre tract of land for taxes, penalties, interest, and costs then delinquent against same, defendants W. E. Appelt and Frank Appelt paid the amount of same to the tax collector of Jackson county; the amount being $204. That said defendants also paid the taxes against said land for the tax year of 1923 before same became delinquent, to the amount of about $36.26. That the approximate market value of said tract of land on April 28, 1923, when it was conveyed to the Appelts by the said Horner, was $15 per acre.

"(11) That on the 28th day of September, 1923, defendants W. E. Appelt and Frank Appelt executed and delivered to the plaintiffs herein a deed conveying to plaintiffs said 176-acre tract of land for a consideration of $2,640 ($15 per acre), $1,000 of which consideration was paid by plaintiffs in cash and the balance of which is to be paid in four equal annual payments of $410 each, due October 1st of the years 1924, 1925, 1926, and 1927, and bearing interest from date at the rate of 7 per cent. per annum, and evidenced by vendor's lien notes and secured by vendor's lien on said land. That by the terms of said deed grantors, Appelts, warranted the acreage at 176 acres, and said tract has since been measured and contains but 159 acres, and said Appelts have refunded to plaintiffs the price of 17 acres at $15 per acre with 7 per cent. interest from date of said deed. That at the time of the delivery of said deed to plaintiffs the said Appelts also contracted in writing with plaintiffs to cure and remove at their own expense certain defects in the title to said land, including the apparent defect therein caused by the recording of the aforesaid abstract of judgment in favor of defendant Urban. That neither the said W. C. Horner nor the said W. E. Appelt or Frank Appelt knew of the existence of the aforesaid judgment of Urban v. Williamson or of the record of the abstract thereof in Jackson county until advised thereof by plaintiffs after deed had been made back by Horner to Appelts and while plaintiffs were examining the title to said land for the purpose of purchasing same from Appelts in September, 1923, and that plaintiffs learned of same first at said time through their examination of an abstract of title to said land.

"(12) That said Williamson claimed to own said land from the date of his purchase from the Mauritzes and Cline on December 2, 1913, until his sale thereof to Horner and Storey on April 20, 1914, and thereafter did not claim to own same; that said Horner and Storey claimed to own said land from April 20, 1914, date of their purchase from Williamson, to January 6, 1915, date of conveyance by Storey to Horner, and that Storey thereafter did not claim to own said land; that W. C. Horner claimed to own said land at all times from January 6, 1915, until April 28, 1923, date he conveyed to Appelts, and has not claimed to own the same at any time since; that the said Appelts claimed

to own said land at all times from date of their conveyance from Horner until they conveyed to plaintiffs, September 28, 1923, and have not claimed to own said land since; and that plaintiffs have claimed to own said land at all times since September 28, 1923.

"(13) That said tract of land has at all times since its sale by Appelts on December 2, 1913, been hay or grazing land, and has never been improved except to the extent of having fences at times on two sides of same and at other times on three sides of same. That during the years 1916 and 1917, and up until some time in April, 1918, T. N. Mauritz and Fred Mauritz had said land leased from W. C. Horner for grazing purposes and grazed cattle belonging to them on said land and an adjoining tract of about 1,000 acres during the whole of said time, having a man in charge of and looking after the said cattle, John Weynandt, and living on and cultivating a tract adjoining same, and such use was being made of said tract at the time the abstract of judgment of Urban v. Williamson was filed in Jackson county, Tex., to wit, on December 11, 1916. That the said T. N. Mauritz and Fred Mauritz procured the lease of said land from the said Horner for one A. C. Wilbeck, and turned the same over to said Wilbeck's foreman, Louis Gary, in April, 1918, and the said Wilbeck continued from the time Mauritz Bros. turned said land over to occupy same as tenant of Horner, through the grazing of his cattle thereon, under the supervision of his foreman, Louis Gary, who lived a short distance therefrom on other land, from the date he took over said place until the expiration of two years thereafter, when he took his cattle off of said tract and fenced it off from the balance of his pasture adjoining. That about 1921 or 1922 plaintiff J. W. Bagby, as agent for the said Horner, leased the said land to Gid Laughter for haying purposes, and the said Laughter and one Jennings cut hay therefrom as such tenants. That said land was leased by plaintiffs to J. W. Wofford for the fall crop of hay in 1923 for a cash rental of $75, and for the 1924 hay crop for a rental of $100.

"(14) That on the 16th day of October, 1923, the aforesaid H. A. Cline executed and delivered to plaintiffs a special warranty deed for said land for a consideration of $1 cash, to cure the record defect in the title to said land by reason of the deed from him to Mauritzes to Williamson never having been recorded.

"(15) That C. J. Williamson was never served with citation in the suit of Urban v. Williamson et al., above referred to (the Lee county suit), did not enter his appearance in said suit, and did not authorize any one else to file a pleading therein for him or to enter his appearance therein, and did not know anything about the pendency of said suit nor of the rendition of the judgment therein against him until the year 1920 or 1921, when he heard that a judgment had been rendered in said suit against him and others as partners, but that he did not learn of the personal judgment against him nor of the abstract of judgment being filed against him in Jackson county until after said abstract of judgment was discovered by plaintiffs in their examination of the title to said land in the fall of 1923. That one A. J. Bell filed one or more pleadings in the suit of Urban against Williamson and others, signing as attorney for E. O. and J. L. Burton and the said Williamson, and that said pleadings were filed by the said Bell by reason of his general employment by Burton & Danforth. That the said Bell never had any conversation with, or communication from, the said Williamson about said case and never met him but once, if ever, and that after the rendition of said judgment. That the said Bell was not present in court when judgment was rendered against Williamson. That the said A. J. Bell believed he was authorized to file pleadings in said cause as an attorney for the said Williamson, but he was not so authorized. That the said C. J. Williamson was at the time of the pendence of the Lee county suit aforesaid himself an attorney, and still is."

These findings of fact are not complained of by any proposition or assignment presented in appellant's brief.

[1] On a former day of this term, we affirmed the judgment in this case, basing our judgment of affirmance upon the holding that appellants acquired no judgment lien upon the land involved in this suit, because Williamson had no title to the land at the time appellants filed their judgment abstract, he having parted with his title more than two years before appellants obtained their judgment against him, and, the deed under which he obtained title having never been placed of record, there was neither title nor apparent title in him through which appellants could acquire a lien upon the land by filing their judgment abstract.

The writer is still impressed with the soundness of this holding, but in a motion for rehearing presented by appellants our attention has been called to the case of Dallas Land & Loan Co. v. Sugg, 237 S. W. 955, in which the Court of Civil Appeals for the Third District seemingly decided the exact question contrary to our holding. The opinion in the case cited was approved by the Supreme Court by a refusal to grant a writ of error. This requires a withdrawal of our former opinion in this case, and a reconsideration of the appeal upon the other questions presented. For this purpose we granted the motion for rehearing and took the case under further consideration.

Upon the facts before set out the learned trial judge filed conclusions of law which contain the following:

"1. That defendants W. E. Appelt and Frank Appelt retained the superior title to said 176-acre tract of land as security for the payment of the aforesaid series of eight vendor's lien notes when they delivered deed to said land to H. A. Cline, T. N. Mauritz, and Fred Mauritz on December 2, 1913, and that as said notes Nos. 5, 6. 7, and 8, with interest from December 2, 1920, had never been paid by their vendees or remote vendees and were not barred by limitation and the lien securing their payment had never been released and said notes were held by the defendants Appelts on the said 28th day of April, 1923, said Appelts still held the superior title to said land at the date of the reconveyance of said land to them by Horner on April 28, 1923; and since the amount of said notes with interest accrued and the taxes,

penalties, interest, and costs thereon paid by the said Appelts, amounted to the approximate market value of the land at that time, the holder of a junior abstract of judgment lien is not entitled to have the land sold as under foreclosure to test its value.

"2. That the plaintiffs in this suit and the defendants herein, W. E. Appelt and Frank Appelt, were not parties to the suit of Urban v. Williamson et al. (the Lee county suit), and are not privies of any parties to said suit with the acquisition of rights from any such parties after the rendition of said judgment in said Lee county suit, and may attack the judgment in the Lee county suit collaterally in this suit.

"3. That as against the plaintiffs in this suit and the defendants W. E. Appelt and Frank Appelt, herein, the judgment rendered in Lee county against defendant C. J. Williamson, in said suit of Urban v. Williamson et al., is null and void because the court in that case did not have jurisdiction of the defendant C. J. Williamson therein, and defendant Herman Urban has no lien on the 176-acre tract of land, title to which is involved in this suit, by reason of his said judgment and the abstracting thereof and recording and indexing of said abstract of judgment in Jackson county, and has never had."

We agree with the trial court in each of these conclusions.

[2] The Appelts by virtue of the express vendor's lien reserved in their deed to Cline and Mauritz retained the superior title to the land so long as the notes given by their vendees for the purchase money remained unpaid, and upon default in the payment of the notes they had the right to assert their superior title and repossess themselves of the land. They did this by obtaining a reconveyance of the land in satisfaction of the unpaid notes.

If their vendees had refused to reconvey the land and they had sued to recover title and possession, their right to a judgment could have been defeated only by pleading and proof of equities in the vendees which would have entitled them upon payment of the unpaid purchase money to have title decreed in them.

[3] Appellant, as the holder of a lien on the land obtained by the record of the judgment against Williamson, is in no better position than Williamson or the vendees of the Appelts from whom he obtained title. Appellant's rights and remedies as the holder of the lien which attached only to the title acquired by Williamson are no greater than those of the holders of that title. Reyes v. Kingman Co. (Tex. Civ. App.) 188 S. W. 450.

[4] The finding of the trial court that the value of the land at the time it was reconveyed to the Appelts did not exceed the indebtedness due them, which is not questioned by any proposition presented in appellant's brief, prevents even a surmise or suspicion of bad faith in the transaction between the Appelts and Horner by which his incomplete title to the land was surrendered to them.

The further facts found by the trial court negative any equities in Williamson or Horner which would have availed either of them, in a suit brought by the Appelts, to recover the land without a tender of the indebtedness due appellees.

[5] It is generally true, as contended by appellant, that the right of the holder of a second lien to foreclose his lien and have the property sold, so that he may buy it at such sale and thereafter redeem it from a purchaser under a prior foreclosure, is an absolute right not dependent upon the value of the property. Davis v. Walker (Tex. Civ. App.) 233 S. W. 524. The case cited announces the general rule as stated by appellant, but the court in that case was dealing with a different question from that now before us.

The rights of a vendor who has reserved an express lien in his deed of conveyance to secure the payment of notes given for the purchase money of land conveyed by him are of greater dignity than those of a mortgage or lien holder, whose only right in the property is that of subjecting it to sale for the payment of his indebtedness. The rights of a vendor who had reserved an express lien in his deed were not involved or discussed in the Davis Case, supra. It may be conceded that, as applied to liens of the character involved in the Davis Case, the rule there stated is sound, but we cannot believe that when, as in the instant case, the vendor of land who has retained an express lien for the payment of the purchase money of the land has, after default in the payment of the purchase money, obtained a valid rescission of his contract of sale and repossessed himself of the land, that the holder of a lien upon the title of the vendee, acquired with constructive notice of the rights of the vendor, is entitled to have his lien foreclosed and the land sold on the theory that if it should now sell for more than its value at the time the vendor obtained a rescission of his contract of sale, such excess should be applied upon the debt of the lien holder.

[6] If appellant, under the undisputed facts of this case, had any right to the land, it was only the right to redeem by tendering to appellees the full amount of their indebtedness. Having failed to make such tender, appellant cannot complain of the judgment.

[7] The court having found upon sufficient evidence that Williamson had no notice of the suit in Lee county in which appellant obtained the judgment against him, upon the record of which appellant's lien is based, appellant has no lien upon the land unless the rule which protects judgments valid upon their face from collateral attack renders this judgment binding upon appellees.

[8-10] The following clear and succinct statement of the rules of law, which we think are applicable to the question here presented, is copied from appellees' brief.

(286 S.W.)

"That one who is neither a party to a suit, nor a 'privy' of a party to the suit, is not bound by the judgment rendered therein, is elementary. This principle is clearly set forth in the syllabus of the opinion in the case of John Murchison et al. v. T. B. White et al., 54 Tex. 78, as follows:

" '(5) *Fraud—Judgment.*—Fraud perpetrated by a party in procuring a judgment does not render it absolutely void, but is only cause for having it declared void, in a proceeding instituted for that purpose and in proper time, as between parties and privies; a different rule applies to strangers to the proceeding, who may collaterally attack a judgment procured by fraud, whenever it is relied on to affect their rights.'

"It is not claimed by appellant that appellees were 'parties' to the suit of Urban v. Williamson, but it is claimed they are 'privies' of Williamson, who was a party defendant. It becomes necessary, therefore, to understand who are included under the term 'privies' as used above.

" ' "Privity" is defined to be mutual or successive relationship to the same rights of property, and within the rule relating to conclusiveness of judgment all persons "privies" to a judgment whose succession to the rights of property thereby adjudicated was derived through or under one or other of the parties to the action, and accrued subsequent to the commencement of that action.' Lamar County v. Talley (Tex. Civ. App.) 127 S. W. 272, 276.

"In 34 Corpus Juris, p. 1010, under the paragraph head, 'What Constitutes Privity,' the foregoing definition is quoted, and on the following page the text concludes: 'One is not a privy to a judgment where his succession to the rights of property thereby affected occurred previous to the institution of the suit.' "

Under these well-settled rules of law, appellees are not bound to the judgment against Williamson, unless it can be held that their title under Williamson was acquired from him subsequent to the rendition of the judgment.

[11, 12] The facts before set out show that Williamson conveyed the title which appellees now hold more than two years before the judgment was rendered. But appellant contends that because this conveyance was void as to him under article 6824, Revised Statutes, appellees should be held bound by the judgment, notwithstanding its invalidity as against a direct attack. We do not think the statute cited can be given this effect. The statute provides that all sales and conveyances of land or any interest therein "shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk, to be recorded as required by law; but the same as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof or without valuable consideration, shall nevertheless be valid and binding." This language is clear and unambiguous and expressly declares that an unrecorded deed passes the title as between the parties to the instrument. The only purpose and effect of the statute is to prevent the holder of title under an unrecorded deed from asserting his title against creditors and subsequent purchasers for value without notice, and it in no way otherwise limits the right and title of one holding under an unrecorded deed.

This being the clear meaning of the statute, it cannot be held that appellees are privies to the judgment against Williamson. We think the case of Burt v. Deorsam (Tex. Civ. App.) 227 S. W. 354, fully supports this holding. In that case the appellee Deorsam, the owner of mineral land, executed a lease to one Hall, who thereafter, on March 20, 1919, assigned the lease to appellant Burt, but this transfer was not filed for record until January 3, 1920, which was after Deorsam (lessor) had filed suit to cancel the lease, making only Hall a party. At the time of filing the suit lis pendens notice was filed, and on July 13, 1919, before the filing of the transfer from Hall to Burt, judgment was rendered canceling the lease. Burt afterward sued Deorsam, asserting rights under this lease, and Deorsam pleaded his judgment. Deorsam argued that Burt was a "privy" of Hall and could not collaterally attack said judgment, but the court said:

"Upon the facts above stated, the court sustained the plea of res adjudicata. This was error. It is a general rule of law that a judgment is binding only as to parties thereto and their privies. 'Privies,' in so far as applicable to the facts of this case, mean those who have purchased from a party to the suit after the same was begun. R. S. art. 7758; Abstract Co. v. McCormac (Tex. Civ. App.) 184 S. W. 1089; Lamar County v. Talley (Tex. Civ. App.) 127 S. W. 276; Village Mills v. Oil Co. (Tex. Civ. App.) 186 S. W. 790; Stout v. Taul, 71 Tex. 444, 9 S. W. 329. Appellant purchased the lease from Hall prior to the institution of the suit against Hall. The lis pendens notice filed in said cause did not affect him. Burke-Simmons Co. v. Konz (Tex. Civ. App.) 178 S. W. 587."

It follows from what we have said that the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.