## NORTH RIVER INS. CO. v. RIPPY.
### (No. 12212.)

Court of Civil Appeals of Texas. Fort Worth.
Nov. 30, 1929.

C. T. Gettys, of Decatur, and R. W. Mayo, of Dallas, for appellant.

H. E. Lobdell, of Decatur, and Owsley & Owsley, of Denton, for appellee.

DUNKLIN, J. The North River Insurance Company has appealed from a judgment rendered against it in favor of T. M. Rippy. The amount which the trial court found to be due the plaintiff, Rippy, on the insurance policy issued by the appellant in his favor insuring his residence against damages from storm, was $1,000.

The case was tried before the court without a jury, and the following are the findings of fact and conclusions of law filed by the trial judge:

"Findings of Fact.

"1. I find that the defendant issued to the plaintiff its policy of insurance, which is in evidence herein, dated Sept. 15, 1927, insuring in the sum of $1000.00 the dwelling house of plaintiff described in his petition, against loss and damage by wind, storm and cyclone.

"2. That the plaintiff paid the premium on said policy and said policy was in force on the night of the 4th day of April, 1928, when said building was damaged by storm.

"3. I find that said building was damaged by a wind storm on the night of April 4th, 1928, to the amount and in the sum of $1,200.-00, none of which damage has been paid.

"4. That on the 17th of April, 1928, in accordance with the provisions of said policy the plaintiff, as alleged demanded the appointment of appraisers to appraise the loss and damage to said building.

"5. That the defendant refused to appoint an appraiser and failed and refused to comply with the said demand of plaintiff for appraisers, and denied any and all liability for such damage to said building.

"6. That the plaintiff within the time provided by said policy mailed to defendant at its office in Dallas proper proof of loss.

"7. That the defendant, within the time stipulated therefor in said policy gave plaintiff notice of its election to repair said building, as stipulated for in said policy, which notice was given after the defendant's refusal to arbitrate and after its denial of liability

and also about ten days after this suit was filed and citation served on defendant.

### "Conclusions of Law.

"1. I conclude as matter of law that by its refusal to arbitrate the damage herein and by its denial of liability for any part of same, it waived its right to repair and restore the building in question, and cannot after suit filed come in and assert such right.

"2. I conclude that the defendant is liable to the plaintiff for the damage to his residence by storm up to the amount of $1000.00 and judgment is rendered accordingly."

The policy contained a provision that the contract of insurance was made and accepted subject to certain stipulations and conditions on the face of the policy, and also the stipulations and conditions printed on the back thereof.

One of those conditions was that the insured should within ten days after loss give written notice to the company of such loss or damage to the property, and, within 60 days after a windstorm or cyclone or tornado has damaged the building, the insured should render to the company a verified proof of his loss, etc. Then follows a provision that, in the event the insured and the company should fail to agree on the amount of loss or damage to the house, each should, on the written demand of the other, select a disinterested appraiser, and the two appraisers thus selected should select an umpire; and the three together should determine the amount of loss and damage resulting from the windstorm. Then follows this provision:

"It shall be optional with this company to take all, or any part, of the articles at the agreed or appraiser value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required; but there can be no abandonment to this company of any property."

As shown by the trial court's findings, the storm occurred on April 4, 1928. The transcript before us contains the plaintiff's first amended original petition, which was filed on December 11, 1928, and was the plaintiff's pleadings at the time of the trial. The plaintiff's original petition does not appear in the record, but in the amended petition there is a recital that it was filed in lieu of his original petition, which latter was filed on May 9, 1928.

The defendant's original answer appears in the transcript, and shows that the same was filed on the 11th day of December, 1928, which was the same date on which plaintiff's amended petition was filed, and the date of the trial on its merits, and it expressly states that it was filed in answer to plaintiff's amended petition. It thus appears that the defendant filed no answer to the original petition until the case was reached for trial on its merits, and that its first pleading was filed on December 11, 1928, seven months after the suit was instituted.

■ Plaintiff's amended petition alleged the issuance of the policy, payment of premiums, the occurrence of the windstorm, and the damage to the building that was covered by the policy as a result of the storm, the service of notice to the insurance company of the injury to the house by reason of the storm, together with proof of loss, all as provided in the policy. Then follows allegations to the effect that plaintiff also served a written notice upon the insurance company demanding the appointment of appraisers to appraise the loss and damage to the building, all in accordance with the stipulations in the policy referred to above. Then follows these allegations in plaintiff's petition:

"That said notice was duly delivered to said defendant prior to the institution of this suit, that said defendant failed and refused to appoint said appraiser, failed and refused to pay said plaintiff any sum of money and denied that they were in any manner liable under said policy, and this plaintiff avers that said defendant has waived any right to repair said building; that by virtue of said demand and the defendant's refusal that said defendant is now liable to and owes the plaintiff the face of said policy towit, the sum of one thousand dollars: Plaintiff avers that he has made demand on said defendant for payment of said one thousand dollars but that said defendant has failed and refused and still fails and refuses to pay said plaintiff said sum or any sum of money to his damage in the sum of one thousand dollars."

Plaintiff did not set out in his petition the stipulation in the policy giving the defendant the right to repair the injury done to the building, but it is quite clear from that portion of his pleadings copied above that he anticipated that the defendant might probably invoke that provision; and it is manifest that the plea of waiver was based upon the failure of the defendant to submit to arbitrators for the determination of the amount of injury to the building and its denial of any liability whatever. Accordingly there was no merit in the defendant's special exception addressed to the petition on the ground that it contained no specific showing of the facts upon which the claim of waiver was based.

■■ After the defendant's special exception was overruled and when the case was called for trial, the defendant filed a motion for continuance in order to procure the testimony of R. W. Mayo, and error has been assigned to the action of the trial court in overruling that motion and then proceeding to the trial of the case.

856

The motion for continuance, among others, contained the allegation "that R. W. Mayo resides in Dallas County and is now absent from the state; that he personally handled for the defendant all negotiations and matters pertaining to plaintiff's claim, and that defendant had waived its option to repair the damage done to the building, which would necessarily be based on supposed statements made by Mayo; that such claim of waiver had not been made in plaintiff's original petition, and a few days before the trial of the case counsel for plaintiff had told defendant's counsel that the only additional pleadings that would be filed would be for the purpose of specifying more particularly the damages claimed by him; and therefore no steps have been taken to have Mr. Mayo present to testify on that issue." The motion for continuance then contains the following additional allegations:

"That defendant cannot anticipate just what testimony or evidence plaintiff may introduce or offer under his said plea of waiver, but to meet any testimony or evidence that may be offered regarding any conduct or statement that may be attributed to said R. W. Mayo as a representative for the defendant, it expects to and can prove by him that he did not agree to waive defendant's right to exercise its option to repair any damage done by windstorm under the provisions of the policy and made no statement denying defendant's liability or refusing payment, to plaintiff, or otherwise indicate any intention to waive the defendant's right under the provisions of the policy giving such option to repair, and that his act in declining to appoint appraisers was due to the fact that any damage done to the building by windstorm was apparently negligible so that the expense of having appraisers would be necessarily out of proportion, possibly amounting to more than the damage, and was considered useless, all of which said testimony is material to defendant's defense under said plea of waiver which has just been filed and is a surprise to defendant."

In its original answer, following a plea of general denial, the defendant specially pleaded the stipulation in the policy copied above, giving it the option to repair the damage done to the building with the further plea that it had elected to make said repairs within the time provided for in said paragraph of the policy, and that plaintiff had refused to permit such repairs to be made. It further alleged its willingness at all times thereafter to make such repairs.

The stipulation in the policy giving the defendant the option to repair the damage done to the building clearly was for its benefit, and the burden did not rest upon the plaintiff in order to show liability, to allege and prove that the defendant had not exercised that option.

According to the terms of the policy, the company became liable for the amount therein agreed to after the house was damaged by the windstorm, and after plaintiff furnished notice and proof of loss stipulated in the policy, and offered to have the amount of loss determined by arbitration.

When plaintiff's original petition was filed, and defendant was served wth citation thereon, it then had notice of the fact that plaintiff would claim he had the right to recover on the policy for the amount stipulated therein, irrespective of the option given to the defendant to repair. While plaintiff's original petition is not in the record, it must be inferred that it contained an allegation of defendant's denial of liability and refusal of payment, especially, since in its motion for continuance there was no allegation of an absence of such allegation in that pleading. Proof of those allegations necessarily would constitute a waiver on the part of the defendant to exercise its option to repair the building after the suit was instituted, if the issue of waiver was properly tendered; and the defendant should reasonably have anticipated such a plea to be filed in reply to any plea by the defendant claiming the right to exercise that option.

In view of those facts in connection with the further fact that the defendant did not see fit to plead the exercise of that option as a defense to plaintiff's suit until December 11, 1928, at the time the case was called for trial and was tried, and seven months after the suit was instituted, there was no sufficient basis for the defendant's claim that the case should be continued on the ground of surprise in order to procure the testimony of its attorney, R. W. Mayo, who, according to allegations in the motion, "personally handled for defendant all negotiations and matters pertaining to plaintiff's claim," in order to controvert plaintiff's plea of waiver. And in this connection it is to be noted that plaintiff did not testify that Mayo agreed to waive the option, but simply that he denied liability as had been alleged in plaintiff's petition, and which was the only fact necessary to be proved in order to establish the alleged waiver. Furthermore, the defendant's own witness, J. W. Bailey, who is the defendant's local agent at Decatur, and who issued the policy, and who, on behalf of the defendant went out with Mayo to examine the house after the windstorm in order to determine the amount of damage done, testified in part as follows:

"I do not know if the company had refused all liability saying they had cancelled the policy, I was not acting as agent. I was with Mr. Mayo. Mr. Mayo was the company's attorney. He said to me he thought the company would not be liable. He said if it was not liable that he did not think it was, he said they were not going to pay anything. I believe it was Mr. Mayo's contention the policy had been cancelled, and that he con-

tended he had given me notice to cancel it. The company told me to cancel all the business it had in Wise County. I cancelled the policy. The general agent, Mr. Wiley, told me to cancel it all in Wise County."

Furthermore, the plea of election to repair was essentially a plea in abatement, which should have been filed and presented for determination before the case was reached for trial on its merits, and the failure of defendant to file the same until seven months after the institution of the suit, and until the case was reached and tried on its merits, was a waiver of right to present such plea. Humphrey v. Nat. Fire Ins. Co. (Tex. Com. App.) 231 S. W. 750; Philadelphia Underwriters' Agency v. Driggers, 111 Tex. 392, 238 S. W. 633.

Accordingly we overrule the assignment of error addressed to the action of the court in overruling appellant's motion to continue.

We conclude further that the court did not err in overruling the defendant's objection to the testimony of J. W. Bailey, noted above, on the stated ground that the alleged statements of Mayo were not made to plaintiff or in his presence. Whether or not the defendant elected to waive its option was an independent fact, which could be proven by any competent testimony, irrespective of whether or not such election was communicated to the plaintiff.

And it may be noted further in this connection that, even if Mayo had been introduced as a witness and had testified that he did not deny liability to the plaintiff, yet, if thereafter he elected not to exercise the option to repair, as testified by defendant's witness Bailey, the election at that time would be binding the same as if it had been made in the first instance in the negotiations between Mayo and the plaintiff.

As said before, defendant's denial of liability operated as a waiver of right to repair, and, after such waiver, the plaintiff had the right to institute the suit, and, after it was instituted, the defendant could not then claim the right to exercise that option. Fidelity Phenix Fire Ins. Co. v. Abilene Dry Goods Co. (Tex. Civ. App.) 159 S. W. 172; Fireman's Fund Ins. Co. v. Galloway (Tex. Civ. App.) 281 S. W. 283; Home Ins. Co. v. Puckett (Tex. Civ. App.) 17 S.W.(2d) 849.

H. J. Ramsey was introduced by the plaintiff to prove the amount of damage done to the house by reason of the windstorm. He testified that he resided in Denton county, some 32 miles from Decatur in Wise county, and that he was a building contractor, and had followed that occupation for 25 years; that for about 16 years he had been engaged in building residences in various parts of the state, and also in the state of Oklahoma; and was familiar with wages for labor for both rough and skilled work pretty generally over the country, and also with the cost of materials used in building construction. He further testified that he had examined plaintiff's house after the windstorm with the view of determining the amount of damage done thereto, and, according to his estimate, the damage so done amounted to about $1,243.50. Several assignments of error are addressed to the action of the court in overruling defendant's objection to Ramsey's testimony on the grounds that he was not sufficiently qualified as an expert to prove such damages, in view of his testimony that he had never constructed any building in Decatur, where the house in question was situated. We conclude that those assignments should be overruled, since the objection so made to the testimony pertained more to its weight than to its admissibility, especially in the absence of any testimony to show different prices for a building constructed in Decatur from those prevailing in Denton and other portions of the state. There was no merit in the further objection that Ramsey had not seen the house before the windstorm, and could not testify as to its condition at that time, since, according to plaintiff's testimony, the house was in good condition before the windstorm, and was then free of the defects found in it thereafter. Rogers & Adams v. Lancaster (Tex. Com. App.) 248 S. W. 661; Central State Bank v. Henderson (Tex. Civ. App.) 286 S. W. 519.

We have reached the same conclusion as to the further objection to Ramsey's testimony as to the amount of damages done to the house, admitted over the defendant's objection that it was a conclusion of the witness and therefore inadmissible, since the witness on further examination gave the items of damage on which his estimate in the aggregate was based.

There was no merit in the further objection to Ramsey's testimony on the ground that he did not examine the house until about eight months after the windstorm, in view of other testimony to the effect that it was in the same condition then as it was immediately after the storm.

We overrule the further assignments complaining of the insufficiency of the evidence to support the court's findings of the amount of damage done to the house, for which judgment was rendered, and the further assignment that the damages allowed were so excessive as to require a reversal.

Accordingly, all of appellant's assignments of error are overruled, the trial judge's findings of fact and conclusions of law are adopted, and the judgment rendered is affirmed.