HYUNDAI MOTOR CO. and Hyundai Motor America, Inc., Petitioners,

v.

Victor Manuel VASQUEZ and Brenda Suarez Vasquez, Individually and on Behalf of the Estate of Alyssa Amber Vasquez, Respondents.

No. 03–0914.

Supreme Court of Texas.

Argued Jan. 6, 2005.

Argued Feb. 15, 2006.

Decided March 10, 2006.

Rehearing Denied May 26, 2006.

Brendan K. McBride, David M. Prichard, Kevin M. Young, Prichard Hawkins & Young, LLP, Thomas H. Crofts Jr., Crofts & Callaway, P.C., San Antonio, David E. Keltner, Jose Henry Brantley & Keltner, Fort Worth, for Petitioners.

Michael A. Caddell, Cynthia Bodendieck Chapman, James Juranek, Caddell & Chapman, Houston, Ricardo G. Cedillo, L. J. Strieber, Davis Cedillo & Mendoza, Inc.,San Antonio, Ezequiel Reyna Jr., Law Offices of Ezequiel Reyna, Jr., Weslaco, for Respondents.

Harvey G. Brown Jr., Wright Brown & Close, LLP, Houston, Vincent S. Walkowiak, O. Rey Rodriguez, Fulbright & Jaworski L.L.P., Dallas, TX, Hugh F. Young Jr., Reston, VA, Brent M. Rosenthal, Baron & Budd, P.C., Dallas, G. Alan Waldrop, Locke, Liddell & Sapp LLP, Austin, for Amicus Curiae.

Justice BLAND delivered the opinion of the Court, in which Justice HECHT, Justice O'NEILL, Justice BRISTER, Justice WILLETT, and Justice CAYCE

joined.*

◼ In this case, we decide whether a trial court abuses its discretion in refusing to allow a voir dire question from counsel that previews relevant evidence and inquires of prospective jurors whether such evidence is outcome determinative. We hold that it does not. The court of appeals held that it does. Accordingly, we reverse and remand.

## I. Background

Four-year-old Amber Vasquez died in a low-speed neighborhood traffic collision, after the passenger-side airbag in her aunt's Hyundai Accent deployed with enough force to catch Amber's chin and break her neck. The driver of the other car had turned unexpectedly in front of the Hyundai, and the force of the collision threw Amber forward in her seat. It is undisputed that Amber was not buckled into her front-seat seat belt at the time of the accident.

Amber's parents, Victor and Brenda Vasquez, sued Hyundai Motor Company and Hyundai Motor America, Inc. (together "Hyundai"), contending that Hyundai

had placed the airbag incorrectly, and that the airbag had deployed with too much force in this low-impact accident. Hyundai responded that the airbag that killed Amber was not defective because a child wearing a seat belt—as state law requires [2]—or sitting in the back seat—as the car's warnings cautioned—would not have been injured by its deployment.

In placing Amber unbuckled in the front seat, Amber's aunt, Valerie Suarez, disregarded airbag warnings on both sunvisors, a hangtag from the rearview mirror, a decal on the dashboard, and a notification in the owner's manual. Suarez ignored the warnings because she planned a short neighborhood trip and believed that the airbags would deploy only at higher speeds. Hyundai conceded that it knew some occupants would ignore the airbag warnings about placing children unbuckled in the front seat,[3] but maintained the risk was outweighed by the benefits of the airbag to all others.[4] Hyundai named Suarez and the driver of the other car as responsible third parties.[5]

The trial judge dismissed two jury panels before seating the jury in the case from a third. During the first voir dire, Amber's counsel asked jurors [6] whether the

---

* The Honorable John Cayce, Chief Justice, Second District Court of Appeals, and the Honorable Jane Bland, Justice, First District Court of Appeals, sitting by commission of the Honorable Rick Perry, Governor of Texas, pursuant to Tex. Gov't Code § 22.005. CHIEF JUSTICE JEFFERSON AND JUSTICE GREEN are recused.

2. See Tex. Transp. Code § 545.413(b)(2) ("A person commits an offense if the person ... allows a child who is younger than 17 years of age and who is not required to be secured in a child passenger safety seat system ... to ride in the vehicle without requiring the child to be secured by a safety belt, provided the child is occupying a seat that is equipped with a safety belt.").

3. See, e.g., Susan M. Mudgett, Comment, *Exploding Liability: Creating a Cause of Action for Defectively Designed Airbags Under the Restatement (Third) of Torts*, 78 Or. l. rev. 827,

842–43 (1999) (citing poll that found 80% of respondents thought it safe to have children under age 13 in the front seat).

4. See, e.g., Richard J. Bonnie & Bernard Guyer, *Injury as a Field of Public Health: Achievements and Controversies*, 30 J.L. Med. & Ethics 267, 277 (2002) (noting that force of airbag deployment involves trade-offs between adults and children, and between belted and unbelted passengers); Lauren Pacelli, Note, *Asleep at the Wheel of Auto Safety? Recent Airbag Regulations by the National Highway Traffic Safety Administration*, 15 J. Contemp. Health L. & Pol'y 739, 761–64 (1999).

5. See Tex. Civ. Prac. & Rem. Code § 33.004.

6. We refer to persons assigned to a court but not yet selected on a jury as "jurors," as this term is generally the one used in court rules. See Tex. R. Civ. P. 223, 224, 226, 226a, 227–32,

fact that Amber was not wearing her seat belt would determine their verdict.[7] After numerous jurors indicated that the lack of a seat belt would determine their verdict, the trial court dismissed the jury panel. During the second voir dire, the trial judge questioned the jurors along similar lines,[8] with slightly fewer, but nonetheless significant, affirmative responses.[9] The court again dismissed the panel.

Before the third voir dire, the trial judge discussed with counsel her concern that the previous jury panels had misunderstood the inquiry about placing a child in the front seat without a buckled seat belt to be one about the weight they could give to particular evidence in the case rather than whether they could fairly consider all of the evidence presented.[10] As a result,

during the third general voir dire, in response to counsel's request to ask general questions "about belting, seat belting, and seat belting habits much akin to what I did the last time I did general voir dire," the trial court responded, "I am going to let you ask those questions." Thereafter, the trial court allowed counsel to ask "general questions about belting" and to inquire about jurors' personal seat belt habits, but she did not allow disclosure that Amber was not wearing one at the time of the accident.[11] Counsel asked questions about whether the jurors buckled their seat belts on short trips, before leaving the garage, before exiting a driveway, and before leaving a parking spot. At the conclusion of the third voir dire, the trial court excused 3 of the first 28 jurors for cause and seated a 12 member jury and one alternate.

235, & 248. For the same purpose, Texas statutes use the term "juror" sometimes, see, e.g., Tex. Educ. Code § 22.006, Tex. Gov't Code §§ 24.014(b), 25.0102(i), 30.00007(b)(3), 30.00013(a), & 62.111; the term "prospective juror" sometimes, see, e.g., Tex. Civ. Prac. & Rem. Code § 74.053, Tex. Gov't Code §§ 61.003, 62.002, 62.004–.006, 62.0111, 62.013, & 62.302; and sometimes both alternately, see, e.g., Tex. Gov't Code §§ 62.015–.017, 62.019, 62.112 & 62.411.

7. Plaintiffs' counsel asked:

> Now, what I specifically am looking for are those among you right now that will say, if [Amber] wasn't wearing a seat belt, then I don't care what the scientific evidence is. I don't care about the characteristics of this particular airbag and how it operated in this particular accident at this particular speed. As long as I know that she wasn't wearing an airbag—I mean a seat belt, that means that, you know, there's no way Hyundai can be responsible. If that is an attitude that you have about seat belts and about airbags, if that is an attitude that you have about accidents of this kind and the tragic results that flow from them, that's what I'm asking you about. Is there anyone here that regardless of what the evidence is, once you hear [Amber] wasn't wearing a seat belt your mind is made up?

8. Specifically, the trial court told the second jury panel that "Amber was not wearing her seat belt," and asked the jurors to raise their hand if they would "decide this case ... based on that one fact alone."

9. During the first voir dire, 29 out of 48 jurors indicated that the fact that Amber was not wearing a seat belt would preclude them from considering any other evidence presented. During the second panel, 18 of the 52 jurors responded affirmatively to the trial court's inquiry.

10. As the trial court stated, "The problem with that is I was automatically excluding some people who may have understood my questions—either of the questions on the seat belt or on the sympathy—merely trying to be persuading them to set aside the idea that they might be giving weight or not being allowed to give weight to the evidence, and that was not the purpose of my question."

11. The trial court stated, "I will let you explore the belting issue," but noted "I want just general questions." The trial court further ordered that any inquiries about whether jurors ensured their children are belted could be done on an individual basis, but as we later discuss, the court changed its ruling on individual voir dire when presented with counsel's question.

The jury heard evidence for three weeks and returned a verdict in favor of Hyundai. It found no design defect and assessed liability for Amber's death to the two drivers (75 percent to Suarez, and 25 percent to the other driver). The trial court rendered a take-nothing judgment.

The Vasquezes appealed, contending the trial court erred in disallowing voir dire inquiry into whether the jurors would be "predisposed, regardless of the evidence," against the Vasquezes because "there is no seat belt in use," to a point that "[the jurors] could not be fair and impartial." Hyundai responded that the proposed voir dire inquiry is improper in that it asks jurors about the weight they would place on a particular piece of relevant evidence, and thus the trial court properly refused to allow it. A panel of the Fourth Court of Appeals affirmed the trial court's judgment. Upon rehearing en banc, however, the court of appeals reversed, holding that the trial court had abused its discretion in disallowing the inquiry because the proposed question focuses "on the ability of the jurors to be fair." [12] This Court granted Hyundai's petition for review. [13]

## II. The Purpose of Voir Dire

 The Bill of Rights in the Texas Constitution guarantees litigants a right to trial by a fair and impartial jury [14] and authorizes the Legislature to pass laws "to maintain its purity and efficiency." [15] The Legislature thus has authority to pass laws establishing those qualified to serve, consistent with the right to a jury trial. [16] To that end, the Legislature has established general juror qualifications relating to age, citizenship, literacy, sanity, and moral character. [17] The Legislature also has established bases for juror disqualification, including those relating to witnesses, relatives, and interested parties. [18] Among these bases, the Legislature has disqualified from jury service anyone who "has a bias or prejudice in favor of or against a party in the case." [19]

 Voir dire examination protects the right to an impartial jury by exposing possible improper juror biases that form the basis for statutory disqualification. [20] Thus, the primary purpose of voir dire is to inquire about specific views that would prevent or substantially impair jurors from performing their duty in accordance with their instructions and oath. [21]

 In addition, this Court recognizes that trial courts should allow "broad latitude" to counsel "to discover any bias or prejudice by the potential jurors so that peremptory challenges may be intelligently exercised." [22] "A peremptory challenge,

12. 119 S.W.3d 848, 856 (Tex.App.-San Antonio 2003) (en banc).

13. 48 Tex. Sup.Ct. J. 45 (Oct. 15, 2004).

14. *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 708 (Tex.1989).

15. Tex. Const. art. I, § 15 ("The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency.").

16. *See Central & M.R. Co. v. Morris*, 68 Tex. 49, 3 S.W. 457, 462 (1887) (statute requiring court instead of jury adjudication of plaintiff's damages after defendant's default held unconstitutional).

17. Tex. Gov't Code § 62.102.

18. Tex. Gov't Code § 62.105.

19. *Id.* § 62.105(4).

20. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).

21. *See Morgan v. Illinois*, 504 U.S. 719, 734–35, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

22. *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex.1989).

commonly referred to as a 'strike,' is defined by rule 232 as one 'made to a juror without assigning any reason therefor.' "[23] Peremptory challenges allow parties to reject jurors they perceive to be unsympathetic to their position.[24] The long-established practice of voir dire inquiry for use in exercising peremptory challenges acknowledges the subjectivity inherent in jury selection voir dire does not lend itself to formulaic management. As one authority has observed:

> [T]he scope of the voir dire examination quite obviously can not be bounded by inflexible rules of thumb, for of all the delicate psychological factors inherent in a jury trial perhaps none is more essentially subjective and hence less submissive to dogmatic limitations.[25]

Peremptory strikes are not intended, however, to permit a party to "select" a favorable jury.[26] Counsel's latitude in voir dire, while broad, is constrained by reasonable trial court control.[27] Such control is necessary because, "[t]hough the motive of a peremptory challenge may be to protect a private interest, the objective of jury selection proceedings is to determine representation on a governmental body."[28] Thus, the exercise of jury strikes is not solely a private endeavor: "[W]hen private litigants participate in the selection of jurors, they serve an important function within the government and act with its substantial assistance."[29]

## III. Voir Dire Inquiry Regarding Facts in a Case

Voir dire inquiry into potential juror bias and prejudice thus is proper to determine whether jurors are disqualified by statute[30] and to seek information that allows counsel to intelligently exercise their peremptory strikes. Because the statute does not define "bias" or "prejudice," we defined them in *Compton v. Henrie*, using their ordinary meanings:[31]

---

**23.** *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 917 (Tex.1979) (quoting TEX. R. CIV. P. 232).

**24.** *Id.* at 919; *see also Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (noting that "[w]hile challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. It is often exercised upon the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another,' upon a juror's 'habits and associations,' or upon the feeling that 'the bare questioning (a juror's) indifference may sometimes provoke resentment.' ") (citations omitted), *overruled in part by Batson v. Kentucky*, 476 U.S. 79, 100 n. 25, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**25.** 4 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE, § 21:19 at 116 (2d ed.2001); *see generally* 8 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 120.02 (2005).

**26.** *Patterson Dental*, 592 S.W.2d at 919 (noting that, in cases with multiple parties, if the number of peremptory strikes allowed to one side is grossly disproportionate, it permits the side with the greater number to actually construct the jury).

**27.** *See Cortez v. HCCI–San Antonio, Inc.*, 159 S.W.3d 87, 92 (Tex.2005); *see also Falter v. United States*, 23 F.2d 420, 426 (2d Cir.1928) (L.Hand, J.) (upholding trial court voir dire without counsel examination because "[t]he length and particularity of the examination of jurors had become a scandal, and required some effective control").

**28.** *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 626, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (holding that, in civil cases, private parties may not base their peremptory challenges on a juror's race).

**29.** *Id.* at 628, 111 S.Ct. 2077.

**30.** TEX. GOV'T CODE § 62.105(4).

**31.** TEX. GOV'T CODE § 312.002; *Cities of Austin, Dallas, Ft. Worth & Hereford v. Sw. Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex.2002); *Owens Corning v. Carter*, 997 S.W.2d 560, 577 (Tex. 1999).

Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality. Prejudice is more easily defined, for it means prejudgment, and consequently embraces bias; the converse is not true.[32]

Other sources confirm that "bias" generally relates to inclinations, while "prejudice" is associated with prejudgment.[33] Although it expressly prohibits only bias or prejudice concerning parties, we recognized in *Compton* that the statute extends to bias or prejudice concerning types of cases.[34] A juror who is prejudiced against all medical malpractice claims, for example, is necessarily prejudiced "against a party in the case," even if they have never met.[35]

Although a juror may be statutorily disqualified because of a bias or prejudice against a type of claim or a general inability to follow the court's instructions regarding the law, this Court has refused to hold that statements that reflect a juror's judgment about the facts of a case as presented, rather than an external unfair bias or prejudice, amount to a disqualifying bias. In *Cortez v. HCCI–San Antonio, Inc.*, an attorney summarized the evidence during voir dire, and then inquired of the jurors whether either party was "starting out ahead." [36] The Court held that such inquiries are improper, and that a trial court should not disqualify a juror based on an answer to an inquiry that seeks "an opinion about the evidence." [37]

 *Cortez* thus adopted the general rule that it is improper to ask prospective jurors what their verdict would be if certain facts were proved.[38] Fair and im-

---

**32.** 364 S.W.2d 179, 182 (Tex.1963).

**33.** *See, e.g.,* BLACK'S LAW DICTIONARY 171, 1218 (8th ed.2004) (defining bias as "[i]nclination; prejudice; predilection," and defining prejudice as "[a] preconceived judgment formed without a factual basis; a strong bias"); MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 147,928 (10th ed.1993) (defining bias as "an inclination of temperament or outlook; *especially:* a highly personal and unreasoned distortion of judgment," and defining prejudice as "(1): preconceived judgment or opinion (2): an adverse opinion or leaning formed without just grounds or before sufficient knowledge").

**34.** *Compton,* 364 S.W.2d at 182 (citing *Houston & T.C. Ry. Co. v. Terrell,* 69 Tex. 650, 7 S.W. 670, 672 (1888) and *Couts v. Neer,* 70 Tex. 468, 9 S.W. 40, 41 (1888)).

**35.** TEX. GOV'T CODE § 62.105(4).

**36.** *Cortez,* 159 S.W.3d 87, 94 (Tex.2005).

**37.** *Id.; see also* Nancy S. Marder, *Beyond Gender: Peremptory Challenges and the Roles of the Jury,* 73 TEX. L. REV. 1041, 1095 (1995) ("[T]he parties have a right to an impartial jury .... They do not, however, have a right to a sympathetic jury of their own creation ...."); Julie A. Wright, *Challenges for Cause*

*Due to Bias or Prejudice: The Blind Leading the Blind Down the Road of Disqualification,* 46 BAYLOR L. REV. 825, 828 (1994) ("[S]ome of the juror responses which are used to form bases of challenges are not indications of actual bias, but are instead, answers to inappropriate weight of evidence questions.").

**38.** Annotation, *Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case,* 99 A.L.R.2d 7, 20 (1965); *see, e.g.,* OKLA. STAT. tit. XII, ch. 2, app., Rule 6 (2005); *Sandidge v. Salen Offshore Drilling Co.,* 764 F.2d 252, 258 (5th Cir.1985); *DeLaCruz v. Atchison, T. & S.F. Ry. Co.,* 405 F.2d 459, 462 (5th Cir.1968); *Sherman v. William M. Ryan & Sons,* 126 Conn. 574, 13 A.2d 134, 135–36 (1940); *Telligman v. Monumental Props., Inc.,* 172 Ga.App. 783, 323 S.E.2d 888, 889 (1984); *Woolen v. Wire,* 110 Ind. 251, 11 N.E. 236, 237 (1887); *Grover v. Boise Cascade Corp.,* 860 A.2d 851, 858 (Me.2004); *Barnes v. Marshall,* 467 S.W.2d 70, 76 (Mo.1971); *Hill v. Turley,* 218 Mont. 511, 710 P.2d 50, 56 (1985); *Pence v. Pence,* 8 N.C.App. 484, 174 S.E.2d 860, 861 (1970); *Patterson v. Corliss,* 112 N.H. 480, 298 A.2d 586, 590 (1972); *Thornsbury v. Thornsbury,* 147 W.Va. 771, 131

partial jurors reach a verdict based on the evidence,[39] and not on bias or prejudice.[40] Voir dire inquiries to jurors should address the latter, not their opinions about the former. *Cortez* involved a general summary of all the evidence, and thus we did not review whether a voir dire question addressed to the weight a juror would give a relevant piece of the evidence could be objectionable. Such an inquiry, however, raises similar concerns.

First, an inquiry about the weight jurors will give relevant evidence should not become a proxy for inquiries into jurors' attitudes, because the former is a determination that falls within their province as jurors.[41] Just as excluding jurors who weigh summarized facts in a particular way infringes upon the right to trial by a fair and impartial jury, so too does excluding jurors who reveal whether they would give specific evidence great or little weight.[42] In both cases, questions that attempt to elicit such information can represent an effort to skew the jury by pretesting their opinions about relevant evidence. And, when all of the parties to the case engage in such questioning, the effort is aimed at guessing the verdict, not at seating a fair jury.

Second, inquiring whether jurors can be fair after isolating a relevant fact confuses jurors as much as an inquiry that previews all the facts. Lawyers properly instruct jurors that voir dire is *not* evidence, yet jurors must answer whether they can fairly listen to all of the evidence based only upon the facts that counsel have revealed. In responding, jurors are unable to consider other relevant facts that might alter their responses, rendering their responses unreliable. This confusion may explain in part why jurors' voir dire reactions to the evidence have not been proven to be predictors of jury verdicts: experience tells that, whatever jurors' stated opinions about particular evidence may be at the outset, they can shift upon hearing other evidence.[43]

 Third, previewing jurors' votes piecemeal is not consistent with the jurisprudence of our sister court.[44] In *Standefer v. State*, the Court of Criminal Appeals held it improper to ask jurors whether

S.E.2d 713, 721 (1963); *see also* Janeen Kerper, *The Art and Ethics of Jury Selection*, 24 Am. J. Trial Advoc. 1, 8 (2000) ("Counsel may object [during voir dire] if the questioning ... constitutes an improper attempt to precondition the jury ....").

**39.** Black's Law Dictionary 873 (8th ed.2004) (defining an "impartial jury" as one that "bases its verdict on competent legal evidence"); *see also Malone v. Foster*, 977 S.W.2d 562, 564 (Tex.1998) (holding that juror's answers "do not establish bias; in fact, they are consistent with a juror's duty to be bound by the evidence in a particular case in reaching his verdict").

**40.** *See* Tex. R. Civ. P. 226a, sec. III ("Do not let bias, prejudice or sympathy play any part in your deliberations.").

**41.** *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex.2005).

**42.** *See Cortez*, 159 S.W.3d at 94.

**43.** *See* Reid Hastie, *Is Attorney–Conducted Voir Dire an Effective Procedure for the Selection of Impartial Juries?*, 40 Am. U.L.Rev. 703, 720 (1991) (publishing results of study concluding that "Attorneys disagree substantially about what information to rely on and which jurors to select, and consistently produce low levels of accuracy in forecasting juror verdict preference prejudices,"). The commentator further observes, "[p]erhaps more importantly, even the heightened power of prediction of statistical models also demonstrates comparatively low levels of success in forecasting juror verdict preferences." *Id.*

**44.** *See Cortez*, 159 S.W.3d at 91–94 (noting similar tests in criminal voir dire cases concerning rehabilitation of jurors, limitations on scope of questioning, and standards for preserving error in denial of challenges for cause); *see also Davenport v. Garcia*, 834 S.W.2d 4, 14 (Tex.1992) ("We give thoughtful consideration to [the Court of Criminal Appeals'] analysis in part to avoid conflicting methods of constitutional interpretation in

they would presume guilt if one fact was proved and no others.[45] Our sister court consistently has observed that

> [Q]uestions that are not intended to discover bias against the law or prejudice for or against the defendant, but rather seek only to determine how jurors would respond to the anticipated evidence and commit them to a specific verdict based on that evidence are not proper.[46]

As the statutory standards for bias or prejudice in civil and criminal cases are the same,[47] voir dire standards should remain consistent.

Finally, the Court's decision in *Babcock v. Northwest Memorial Hospital* does not dictate that a trial judge must accept questions that seek to assess jurors' opinions about the weight they will place on particular evidence. In that case, we held that counsel could question jurors about bias or prejudice resulting from a societal influence outside the case—namely, tort reform.[48] In contrast, a question that asks jurors to judge the weight to be given an operative fact will not reveal whether jurors have potential external biases or prejudices that improperly skew their view of case facts.

 Statements during voir dire are not evidence, but given its broad scope in Texas civil cases, it is not unusual for jurors to hear the salient facts of the case during the voir dire. If the voir dire includes a preview of the evidence, we hold that a trial court does not abuse its discretion in refusing to allow questions that seek to determine the weight to be given (or not to be given) a particular fact or set of relevant facts.[49] If the trial judge permits questions about the weight jurors would give relevant case facts, then the jurors' responses to such questions are not disqualifying, because while such responses reveal a fact-specific opinion, one cannot conclude they reveal an improper subject-matter bias.

## IV. Trial Court Discretion

 One of the primary rules of voir dire in Texas civil cases has long been that trial courts have broad discretion in conducting it.[50] Until the court of appeals' decision in this case, neither this Court, nor any intermediate appellate court, had held that a trial court abuses its discretion in excluding a voir dire question that incorporates isolated facts in a case.[51] In two

---

our unusual system of bifurcated highest courts of appeal.").

**45.** 59 S.W.3d 177, 183 (Tex.Crim.App.2001) (holding it was improper to ask jurors "[w]ould you presume someone guilty if he or she refused a breath test on their refusal alone?").

**46.** *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex.Crim.App.2005).

**47.** The Texas Code of Criminal Procedure provisions concerning bias or prejudice mirror those applicable to civil trials. *See* Tex. Crim. Proc. Code art. 35.16(a)(9); *Smith v. State*, 907 S.W.2d 522, 530 (Tex.Crim.App. 1995) (holding that "bias or prejudice in favor of or against the defendant" in article 35.16(a)(9) includes bias for or against the

State, as bias against one would constitute bias in favor of the other).

**48.** 767 S.W.2d 705, 706 (Tex.1989).

**49.** *See Cortez*, 159 S.W.3d at 94 ("Such attempts to preview a veniremember's likely vote are not permitted.").

**50.** *Cortez*, 159 S.W.3d at 92; *Babcock*, 767 S.W.2d at 709; *see also Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997) (applying abuse-of-discretion standard in reviewing whether peremptory strike was discriminatory); *Compton*, 364 S.W.2d 179, 182 (Tex. 1963) (applying abuse-of-discretion standard in reviewing whether juror was disqualified).

**51.** *See, e.g., Greenman v. City of Ft. Worth*, 308 S.W.2d 553, 554 (Tex.App.-Fort Worth 1957, writ ref'd n.r.e.) (trial court did not abuse its

instances, this Court has refused the writ from appellate decisions upholding trial courts that rejected such inquiries.[52] For *good reason*: an attorney's question is easier to parse in the courtroom than it is in an appellate record. In this case, for example, when a juror specifically asked whether questions about prejudice should take into account evidence already disclosed by counsel, the response was ambiguous:

> PROSPECTIVE JUROR NO. 7: I don't understand that question. Does that mean like that by what we have heard so far we haven't made a judgment?

[PLAINTIFFS' COUNSEL]: Yeah. I don't want—Is there anyone here who has already made up their mind? Let me ask that question real, real loud again. Is there anybody here that thinks that they have already made up their mind on this case right now before you have heard any evidence whatsoever?

Without being present in the courtroom, one cannot tell whether jurors might have understood this response to be "Yes" or "No."

It can be a close question whether a juror's response indicates a prejudice due to personal animus or bias, rather than a fair judgment of the previewed evidence.[53]

---

discretion in excluding voir dire question in condemnation case asking whether jurors had any objection to awarding particular dollar amounts because of the large amount of money involved); *Lassiter v. Bouche*, 41 S.W.2d 88, 90 (Tex.Civ.App.-Dallas 1931, writ ref'd) (affirming trial court's decision to exclude question about whether any prejudice existed against the use of an oral agreement to dispute the terms of a written contract as an improper commitment question); *Campbell v. Campbell*, 215 S.W. 134, 136–37 (Tex.Civ. App.-Dallas 1919, writ ref'd) (trial court did not abuse its discretion in disallowing: "Would the fact that the testator in making his will left out ... one or more members of his family influence you in finding a verdict in this case?"). The only intermediate court of appeals case to reverse a trial court's decision held it an abuse of discretion to *allow* the question. *Parker v. Schrimsher*, 172 S.W. 165, 170 (Tex.Civ.App.-Amarillo 1914, writ ref'd) ("[W]ould you let the fact that Schrimsher executed the mortgage or mortgages to the bank influence you in determining whether or not the property in controversy was a homestead of himself and family at the time he executed the mortgage?").

52. Both *Campbell* and *Lassiter* are writ refused cases, and in both, the appellate courts held that counsel may not seek responses that commit jurors to a particular view of the evidence before it is presented. *See Lassiter*, 41 S.W.2d at 90; *Campbell*, 215 S.W. at 137. Decided in 1931, *Lassiter* carries the imprimatur of Texas Supreme Court precedent. *See* TEXAS RULES OF FORM (Texas Law Review Ass'n et al. eds., 10th ed. 2005) (In

cases after 1927, "writ refused" denotes that the "[j]udgment of the court of civil appeals is correct," with "[s]uch cases hav[ing] equal precedential value with the Texas Supreme Court's own opinions."). The Court refused the writ in *Campbell* in 1919, an amorphous time in our writ practice. At least two cases of that era interpret the refusal of a writ to mean the court of appeals' opinion is binding precedent, but later the Court noted that writ refusals during that era signified an agreement with the judgment of the court of appeals, but not adoption of the opinion. *Compare Binford v. Harris County*, 261 S.W. 535, 537 (Tex.Civ.App.-Galveston 1924, writ ref'd) ("The ... decision, rendered in 1918 by this court, with writ of error refused by the Supreme Court [, is] the law of the state until changed ...."); *Urban v. Bagby*, 286 S.W. 519, 523 (Tex.Civ.App.-Galveston 1926), *aff'd on other grounds*, 291 S.W. 537 (Tex. Comm'n App.1927, judgm't adopted) ("The opinion in the case cited was approved by the Supreme Court by a refusal to grant a writ of error.") *with Ulbricht v. Friedsam*, 159 Tex. 607, 325 S.W.2d 669, 674 (1959) ("While the refusal of a writ of error in 1917 did not mean what it does now, it meant that the Supreme Court was satisfied with the correctness of the judgment rendered."). *See generally*, Ted Z. Robertson and James W. Paulsen, *Rethinking the Texas Writ of Error System*, 17 TEX. TECH. L. REV. 1, 10–20 (1986).

53. *See* John T. Bibb, Comment, *Voir Dire: What Constitutes an Impermissible Attempt to Commit a Prospective Juror to a Particular*

Similarly, it can be a close question whether a voir dire inquiry focuses on the former or the latter, as the question presented for a ruling in this case reflects. Determining whether jurors' answers assume or ignore the evidence disclosed to them turns on the courtroom context, and perhaps the looks on their faces. So, too, does the import of counsel's questions, and whether as phrased they seek external information or a preview of a potential verdict. The trial judge is in a better position to evaluate the reasonableness of both aspects—the question and the answer.

We observed in *Cortez* that trial judges have discretion to clarify whether a juror's response is the result of confusion, misunderstanding, or mistake.[54] Similarly, the trial judge must have discretion to exclude questions that seek to gauge the weight a juror will place on specific evidence. In *Cortez*, we held improper both (1) a juror's disqualification based on answers that previewed the juror's vote, and (2) the actual questions that sought the same.[55] Depending on the circumstances, a trial judge may choose to hear jurors' responses before deciding whether an inquiry pries into potential prejudices or potential verdicts, but if the question reaches for the latter, a trial court does not abuse its discretion in refusing to allow it. If the trial court allows a question that seeks a juror's view about the weight to give relevant evidence, then the juror's response, without more, is not disqualifying.

Permitting disclosures about the evidence the jury will hear during the case

increases the potential for discovering external biases, but inquiries to jurors after doing so should not spill over into attempts to preview the verdict based on the facts as represented to the jurors. Balancing these competing concerns depends on the facts in a case and on the inquiries posited to the jury. The trial judge is in a better position to achieve the proper balance.

## V. The Question

The Vasquezes contend the trial court erred in refusing to allow the following inquiry to the jurors:

> THE COURT: What is the type of question you need to ask other than what has already been asked about their own individual use of seat belts or not seat belts?
>
> [PLAINTIFFS' COUNSEL]: Your Honor, I need to know whether or not they would be predisposed regardless of the evidence to—Their preconceived notion is that if there is no seat belt in use, no matter what else the evidence is, that they could not be fair and impartial.
>
> THE COURT: And that's the type of question you are asking to ask?
>
> [PLAINTIFFS' COUNSEL]: That's the kind of question I need to ask . . . .

After Hyundai's objection that the question would "pretest these jurors about the facts of this case," the trial judge stated:

> THE COURT: All right. I'm going to sustain the objection. We are not going to go any further into seat belts . . . .

The court of appeals held that the trial court abused its discretion in excluding the

*Result*, 48 BAYLOR L. REV. 857, 874 (1996) (noting that jurors will "likely understand questions as to whether the juror would consider, be prejudiced by, or be influenced by, certain evidence to mean the same thing"); *see also Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 373 (Tex.2000) (noting that a juror may have misunderstood a voir dire question).

54. *Cortez*, 159 S.W.3d at 92.

55. *Id.* at 94 (stating that "attempts to preview a veniremember's likely vote are not permitted," and that "[a] statement that one party is ahead cannot disqualify if the veniremember's answer merely indicates an opinion about the evidence").

inquiry, agreeing with the Vasquezes that the proposed question "clearly focuses on the ability of the jurors to be fair,"[56] because, upon learning that Amber was not wearing a seat belt, jurors should not be so biased that they could not consider the remaining evidence in the case. Here, however, the trial court reasonably could have determined that the question seeks to gauge the jurors' verdicts and therefore we disagree with the court of appeals.

First, the question isolates a single fact material to the case: that Amber did not wear a seat belt. Hyundai's defense at trial rested in part on a theory that its airbags would not have harmed a child wearing a seat belt, as required by law, or sitting in the back seat. Assuming that placing an unbelted child in the front seat is relevant, admissible evidence, reasonable jurors could base their verdict on that fact alone.[57] By isolating this fact, the question seeks to identify those jurors who agree that the one fact overcomes all others. As reasonable jurors, however, it is within their province to so conclude.[58] The question thus asks the jurors' opinion about the strength of this evidence, and does not cull out any external bias or prejudice.

 Jurors should not base their verdicts on matters that are irrelevant, inadmissible, or unfairly prejudicial, and counsel is entitled to frame voir dire inquiries that ensure that the seated jury will not do so. In those cases in which prejudicial evidence cannot be excluded,[59] a party is entitled to a limiting instruction,[60] and to inquire whether jurors can follow it. Here, however, both the trial court and the court of appeals concluded that evidence of the lack of a buckled seat belt was relevant and admissible; thus, the trial court could have determined that the inquiry focused upon the weight jurors would give specific evidence.

Second, incorporating phrases associated with an inquiry into whether the jurors hold a preconceived bias does not alter the basic substance of this question. Although the proposed question refers to predispositions and preconceived notions, both concepts properly relate to opinions jurors hold *before* entering the courtroom and hearing the relevant facts. Here, the question includes a relevant fact; thus, responses to it encompass more than *pre* dispositions or *pre* conceived notions. In this case, the jurors' judgments about the fact that Amber did not wear a seat belt at the time of this accident are not separable from their potential verdict. The proposed inquiry asks about these judgments, not about any separate unfair prejudice against a party or a claim jurors may have held before hearing the facts of the case.

**56.** 119 S.W.3d 848, 856 (Tex.App.-San Antonio 2003) (en banc).

**57.** The Vasquezes contended in the court of appeals that evidence regarding Amber's lack of a buckled seat belt should have been excluded. The trial court allowed the jury to hear the evidence. In a footnote, the court of appeals held that the evidence is admissible, and thus concluded it was a relevant subject for voir dire inquiry. 119 S.W.3d at 851 n. 2. We assume for the purposes of this discussion that the lack of a buckled seat belt is admissible evidence, and thus seat belt use generally was a relevant topic for voir dire examination.

**58.** *See Campbell*, 215 S.W. 134, 137 (Tex.Civ. App.-Dallas 1919, writ ref'd) (holding that "[a] juror that will not be influenced by any material fact, properly admitted ... is an uncommon person. All material and admissible facts ought and are presumed to influence the juror, notwithstanding some will outweigh and exercise greater influence than others.").

**59.** *See, e.g.,* TEX. R. EVID 411 (allowing evidence of liability insurance when offered for "proof of agency, ownership, or control" or "bias or prejudice of a witness").

**60.** *See* TEX. R. EVID. 105(a).

The Vasquezes maintain that, even if the proposed question is a commitment question, it nonetheless is proper because the only commitment the question seeks is to have jurors consider all of the evidence, as the law requires.[61] The phrases "regardless of the evidence" and "no matter what else the evidence is" included in this question, however, do not transform its substance into a commitment to listen to the evidence, because the question itself isolates one relevant piece and its impact on juror decision-making. Asking whether jurors will ignore all of the relevant facts, or all of the relevant facts *but one* are two very different questions—an affirmative answer to the former reflects bias or prejudice, but an affirmative answer to the latter, without more, reflects that jurors think a presented fact is most important, based upon what they have been told by counsel.

The emphasis of the question is not ameliorated by asking in it whether jurors could be fair and impartial. "Called as they are from all walks of life, many [jurors] may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges."[62] In *Cortez*, we held that fair jurors do not leave their knowledge and experience behind, but nonetheless must approach the evidence with an open mind.[63] However, if an inquiry suggests that, to be "fair," jurors must not decide the case based on a relevant fact, then a trial court reasonably could conclude that the question seeks a response that reveals nothing about a juror's potential fairness, but instead attempts to guess about his potential verdict.

The Vasquezes rely upon several intermediate appellate court decisions to contend that the proposed question is in the form of a permissible commitment question. In those cases, however, the courts of appeals deferred to the trial courts' discretion in allowing the questions; none of them reversed a trial court for excluding a question.[64] We disagree that trial courts *must* allow such questions. They do not present a basis for juror disqualification, as the appellate courts that have upheld trial courts' rejection of them have observed.[65]

■■■ The substance of a question, not its form, determines whether it probes for

**61.** *See* Tex. R. Civ. P. 226a, sec. II (Admonitory Instructions to Jury Panel and Jury).

**62.** *McDonough*, 464 U.S. 548, 555, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).

**63.** *Cortez*, 159 S.W.3d 87, 93 (Tex.2005).

**64.** *See, e.g., City Transp. Co. v. Sisson*, 365 S.W.2d 216, 219 (Tex.Civ.App.-Dallas 1963, no writ) (affirming trial court decision to allow inquiry into whether plaintiffs' use of narcotics, if introduced into evidence, would bias jurors against the party); *Rothermel v. Duncan*, 365 S.W.2d 398, 402 (Tex.Civ.App.-Beaumont 1963) (error not preserved as to trial court's decision to allow inquiry into whether jurors would "take into consideration the fact that the witnesses to the disputed will were, at the time of its execution, in the employ of appellant"), *rev'd on other grounds*, 369 S.W.2d 917 (Tex.1963); *Airline Motor Coaches v. Bennett*, 184 S.W.2d 524, 528 (Tex.Civ.App.-Beaumont 1944) (affirming trial court's decision to allow: "Would the mere presence of a quart of rum ... in [the] car prejudice you at all in this case?"), *rev'd on other grounds*, 144 Tex. 36, 187 S.W.2d 982 (1945).

**65.** *See Lassiter*, 41 S.W.2d 88, 90 (Tex.Civ.App.-Dallas 1931, writ ref'd) ("Counsel should not be permitted, by questions to a prospective juror, to commit such juror, in advance of the evidence, as to the weight he would give any certain evidence."); *Campbell*, 215 S.W. 134, 137 (Tex.Civ.App.-Dallas 1919, writ ref'd) ("To require [a juror] to say that he will or that he will not let a given material fact influence him in reaching a conclusion, if chosen, is simply to commit him against that material fact in advance .... [This] would be improper.").

prejudices or previews a probable verdict.[66] The trial court in this case reasonably could have concluded that the substance of the proposed question did not present a basis for disqualifying a juror for cause, and instead sought to test the weight jurors would place on the relevant fact that Amber was not wearing a seat belt at the time of the accident. Thus, the trial judge did not abuse her discretion in refusing to allow it.

## VI. Further Questions

At the conclusion of the general questioning of the panel, the trial judge asked counsel to state the additional questions he sought to ask the jurors about seat belts. The Vasquezes proffered the above question. In sustaining Hyundai's objection, however, the trial judge also ruled: "We are not going to go any further into seat belts."[67] In so ruling, the trial judge reversed an earlier decision to allow further follow up about seat belt usage during the time allotted to counsel to question jurors individually at the bench. In sustaining an objection to an improper voir dire question, a trial court should not foreclose *all* inquiry about a relevant topic. The Vasquezes' complaint as to this part of the trial court's ruling, however, is not preserved.

A trial court may not foreclose a proper line of questioning, presuming that the actual questions posed are proper.[68] In some instances, an area of inquiry may be proper, but not the particular question asked. In such circumstances, a trial court may exercise its discretion to reject the form of the question.[69] If it is necessary to discuss the facts in the case to probe for potential biases, counsel must frame corresponding inquiries to avoid jury confusion and ensure that the question does not seek to preview the verdict. When the trial court determines that a proffered question's substance is confusing or seeks to elicit a pre-commitment from the jury, counsel should propose a different question or specific area of inquiry to preserve error on the desired line of inquiry; absent such an effort, the trial court is not required to formulate the question.

Thus, to preserve a complaint that a trial court improperly restricted voir dire, a party must timely alert the trial court as to the specific manner in which it intends to pursue the inquiry.[70] Such a requirement provides the trial court with an opportunity to cure any error, obviating the need for later appellate review, and further allows an appellate court to examine the trial court's decision in context to determine whether error exists, and if so, whether harm resulted.[71] In *Babcock*, we held that litigants need not present a list of each intended voir dire question, but parties must nonetheless "adequately apprise[ ] the trial court of the nature of their inquiry."[72] A timely, specific pres-

---

66. *See Cortez*, 159 S.W.3d 87, 93 (Tex.2005).

67. The trial court also ruled that Hyundai could not ask questions about "sympathy."

68. *See Barajas v. State*, 93 S.W.3d 36, 38 (Tex.Crim.App.2002) (holding that trial court abused its discretion in preventing "a proper question about a proper area of inquiry"). *See also Cortez*, 159 S.W.3d 87, 92 (Tex.2005) ("[T]rial judges must not be too hasty in cutting off examination that may yet prove fruitful.").

69. *Id.*

70. Tex. R. App. P. 33.1; *Babcock*, 767 S.W.2d 705, 707–08 (Tex.1989).

71. Tex. R. App. P. 33.1.

72. 767 S.W.2d at 706–07 (holding that error was preserved by counsel's statement "that the Court has precluded me from asking questions as to whether the jury has heard or read about, not necessarily the insurance crisis, but the liability crisis and the lawsuit crisis"). In *Babcock*, the party seeking to ask additional voir dire questions tendered the questions

entation to the trial court of the manner of an inquiry is important because it is difficult to evaluate after a trial whether the trial court's denial of an inquiry caused a biased juror to be seated on the jury or to evaluate what additional information a party could have adduced for the exercise of peremptory strikes.[73] Thus, the Court traditionally has adhered strictly to the principle that voir dire objections must be timely and plainly presented.[74]

Here, in response to the trial judge's request that counsel specify the type of additional inquiry he would ask, counsel framed one inquiry. The proposed question is virtually the same inquiry that the trial court perceived had caused confusion during the second voir dire. That the trial court did not allow a similarly confusing question does not mean, though, that the trial court would have rejected a different approach had counsel proposed it. For example, the trial court could not have denied a question that asked if any juror had a bias against product liability lawsuits that would prevent them from considering the Vasquezes' specific claims. Such a bias, if firmly held, would disqualify any

prospective juror who confessed such a belief. Not all questions or areas of inquiry involving the facts of a case will impermissibly attempt to pre-test the weight jurors will give those facts. But absent counsel proposing a different method of inquiry that would avoid continued confusion or pre-commitment, the breadth of the trial court's ruling is untested. Counsel does not have to present a list of questions to preserve error, but after the trial court's ruling sustaining Hyundai's objection to the one presented, it was incumbent on the Vasquezes to request alternative approaches to avoid the problems the trial court was addressing by its ruling. Moreover, the fact that counsel asked other general seat belt questions during the first voir dire does not shed light on the extent of the trial court's ruling in the third, when counsel already had asked some general seat belt questions and did not refer to the first two voir dires, or any question in them, in response to the trial judge's request for the type of additional questions counsel sought to ask—much less seek a ruling on other types of questions counsel previously had asked without objection.[75] In determining whether error

to the trial court, but the trial court refused to accept them. *Id.*

**73.** *See McDonough,* 464 U.S. 548, 555, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (holding that, in a civil case in which a juror failed to provide information in response to a voir dire question, counsel must show that juror's motive for withholding it affected his impartiality, in part because: "A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from [the] juror on voir dire examination.").

**74.** *See, e.g., Hallett v. Houston Nw. Med. Ctr.,* 689 S.W.2d 888, 889–90 (Tex.1985) (holding that error was waived in trial court's failure to excuse a juror for cause by not informing

court before exercise of peremptory challenges that counsel lacked sufficient peremptory challenges to remove all objectionable jurors).

**75.** As we have noted, during the third general voir dire, counsel referred to questions "about belting, seat belting, and seat belting habits much akin to" the first voir dire. The trial court responded, "I am going to let you ask those questions." Upon further questioning at the individual voir dire, counsel did not seek to ask other questions from the first voir dire, and did not refer to it. In the second voir dire, the trial court and the parties ceased efforts to select a jury after the trial court gave preliminary instructions to the jury and asked the single seat belt question counsel preserved for review in the third voir dire. Thus, no other questions or areas of inquiry from the second voir dire exist, save the question we have addressed.

was preserved, the question is not, as the dissents contend, whether the trial court knew the substantive area of inquiry about which counsel wanted to ask. The trial court knew counsel wanted to further inquire in some manner about seat belts. But the trial court determined that the way in which counsel posed the inquiry confused the jury and elicited pre-commitment, a call that the dissents agree fell within its discretion. Counsel's continued pursuit of the same inquiry did not preserve error on other inquiries that might have been proper had counsel posed them. We cannot infer, as the dissents suggest, from the fact that the trial judge *allowed* other questions in the first voir dire that she would *not* have allowed other questions in the third, had counsel presented them in response to her request for the type of questions counsel sought to ask.

The Vasquezes carried their objection to the trial court's ruling throughout the remainder of individual voir dire, but they did not frame additional inquiries or convey to the trial court that the thrust of any remaining questions would be different from the single one presented for a ruling.[76] We do not know whether the trial court would have allowed other sorts of inquiries had counsel presented their substance. We therefore hold that the record does not present a sufficient basis for review of the trial court's ruling foreclosing further inquiry into seat belts.

\* \* \* \* \* \*

The Texas Constitution guarantees a trial by a fair and impartial jury, and our courts use voir dire to achieve that goal. Voir dire inquiries that explore external biases and unfair prejudices further the effort, but those that test jurors' possible verdicts based on case-specific relevant evidence detract from it. The distinction between the two in some cases is a fine one. Thus, we vest trial judges with the discretion to decide whether an inquiry constitutes the former or the latter; as appellate courts, we should defer to their judgment.[77] We hold that the trial court did not abuse its discretion. We therefore reverse the judgment of the court of appeals and remand the case to that court to consider the Vasquezes' remaining issues on appeal.

Justice MEDINA filed a dissenting opinion, in which Justice WAINWRIGHT and Justice JOHNSON joined.

Justice WAINWRIGHT filed a dissenting opinion, in which Justice JOHNSON joined.

Justice WAINWRIGHT, joined by Justice JOHNSON, dissenting.

I join JUSTICE MEDINA's dissent[1]

---

**76.** After the trial court had ruled on the parties' challenges for cause, the Vasquezes renewed their objection that the court improperly had restricted the voir dire, but did not frame further seat belt inquiries for a ruling. If the complaint on appeal is that a trial judge has not allowed sufficient questions about a particular subject matter, then a party should detail its areas of inquiry before challenging the juror for cause, allowing the trial judge an opportunity to cure the problem. *Cf. Hallett*, 689 S.W.2d at 889 (noting that, "[a]bsent such notice to the trial court, [a party] waive[s] any error committed by the court in its refusal to discharge those jurors who were challenged for cause").

**77.** *Malone*, 977 S.W.2d 562, 564 (Tex.1998) ("If prejudice is not established as a matter of law, the trial court makes a factual determination as to whether the venire member should be disqualified."); *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex.1963) (deferring to trial court's decision to overrule a motion for mistrial which alleged a juror was biased because "[t]he trial court had the opportunity of observing the juror as he testified and was in better position than an appellate court to evaluate the juror's sincerity and his capacity for fairness and impartiality").

**1.** However, I express no opinion on whether I agree with the result reached by the majority or the dissent in *Standefer v. State*, 59 S.W.3d 177 (Tex.Crim.App.2001).

and write to emphasize two points.

The Court identifies the issue in this case as whether the trial court abused its discretion in refusing to allow one question during voir dire. The Court identifies "the question" in the following exchange at the trial court:

THE COURT: What is the type of question you need to ask other than what has already been asked about their own individual use of seat belts or not seat belts?

[PLAINTIFFS' COUNSEL]: Your Honor, I need to know whether or not they would be predisposed regardless of the evidence to—Their preconceived notion is that if there is no seat belt in use, no matter what else the evidence is, that they could not be fair and impartial.

THE COURT: And that's the type of question you are asking to ask?

[PLAINTIFFS' COUNSEL]: That's the kind of question I need to ask ....

By so framing the issue, the Court makes a hard case easier. Certainly there is no entitlement to ask a specific question during voir dire. Even if a proper question to a jury panel is barred by a trial court, counsel can often rephrase the question to probe the relevant subject. I agree with JUSTICE MEDINA; the central issue in this case should not be the propriety of asking this one question. The key issue is the trial court's barring counsel from inquiring about an entire and admittedly relevant subject during voir dire. This does not mean that voir dire should be lengthy, only that properly limited voir dire should be allowed on the important issues in a case.

After going through two jury panels and trying to seat a jury during the third, the trial judge, understandably frustrated, precluded not just one question but any further questioning on seat belts. This ruling was an about-face from the procedure she had established for the questioning of the third panel. Following the dismissal of the second panel, the trial court held a hearing and outlined a procedure for the third voir dire: the court and counsel could conduct the initial questioning, absent case-specific facts, about venire panel members' attitudes toward seat belt usage; subsequent specific questioning by counsel regarding seat belt usage would be permitted only during the individual questioning of panel members at the bench. During general questioning of the third voir dire panel, plaintiffs' counsel approached the bench seeking clarification of the seat belt usage questions he could ask.[2] The court allowed questions about the panelists' personal seat belt habits, but not about panelists' attitudes towards the seat belt usage of others or their personal attitudes concerning the seat-belting of minors. The court reserved for individual questioning at the bench after general voir dire any questions concerning seat-belting children and seat belt usage of other persons. In accord with the court's ruling, plaintiffs' counsel only asked questions about the venire members' personal seat

---

2. Plaintiffs' counsel stated:

[PLAINTIFFS' COUNSEL]: It is my understanding that the Court has instructed me not to ask the question about the child being not belted and I think I know how to make that distinction, although for the record I do object that the Court instructed me not to go into that area of inquiry. I think that objection is already on the record.

It is my understanding that I want to ask them questions— What I want to do is ask them general questions about their general attitudes about belting such as—

THE COURT: Their own personal habits.

[PLAINTIFFS' COUNSEL]: Their own personal habits such as how many of you belt before you start the car.

After hearing arguments from both parties, the court ruled, "I'm going to let you ask general questions about belting. Not about children, but about their attitudes about putting seat belts on themselves."

belt usage. After general questioning, plaintiffs' counsel reminded the trial judge that, per her instructions, he had reserved questioning of venire members' attitudes about seat belt usage of others, including minors, until individual questioning of panelists at the bench. The trial judge refused to allow the questioning, instructing "we are not going any further into seat belts." The Court concludes that counsel's objections and statements and the context of the discussion with the court do not preserve plaintiffs' objection. I disagree.

By the third voir dire, the parties knew that asking questions specifically about Amber was too emotionally sensitive and was barred. Despite plaintiffs' less-than-perfect single statement on which the Court's opinion turns, the rest of the bench discussions in the record reveal the trial court and the attorneys were discussing a category of questions regarding seat belt usage and not just "a question." The trial court's ruling precluded an entire category of questions that were not only clearly relevant but were central to the case for all parties, and the objection to the trial court's ruling preserved error on plaintiffs'

complaint that it did not have an opportunity to ask about individual jurors' seat belt attitudes, especially toward seat-belting minors. Whether the questions would have revealed disqualifying bias or not, the answers would have assisted in the intelligent exercise of peremptory challenges.[3] This is the harder issue which the Court concludes was not preserved.

The Court says that counsel did not sufficiently apprise the trial judge of "additional inquiries" that he wanted to ask. 187 S.W.3d 743, 760. This contradicts the information in the record. The trial court's discussions with counsel at the bench, particularly during the general questioning of the third voir dire, demonstrate the court was well aware plaintiffs' counsel sought to ask questions concerning juror attitudes for seat belt usage of others, particularly of minors.[4] In addition to objecting to being precluded from "exploring the jurors' attitudes" on this topic, plaintiffs' counsel explained that he wanted to ask the questions he asked during the first voir dire, describing them as "attitude questions about belting, seat belting, and seat belting habits much akin to what [he] did the last time [he] did general voir dire."[5] If the prior voir dire questioning

---

3. Presumably, the trial court also would have precluded defendants from asking about panelists' general attitudes toward airbags, which is also a central issue in this case.

4. At the bench conference during the third voir dire's general questioning, plaintiffs' counsel asked for additional clarification to determine what he could ask during general questioning rather than reserve for individual questioning.

[PLAINTIFFS' COUNSEL]: The Court is permitting questioning about general attitudes and personal practice. It's not clear to me if that personal practice would include those of you who have children, do you ensure that all of your children are belted before you start the car.

THE COURT: We will do that on individual if, in fact, you have gotten something that you need. We are not doing children on this one.

The court indicated that it was aware plaintiffs' counsel wanted to ask questions about children and seat belts.

5. The trial court precluded counsel from asking a number of unobjectionable questions that he had asked during the first voir dire, including (quoted as in the record):

[PLAINTIFFS' COUNSEL]: How many of you require your passengers to [put their seat belt on] before you move the car?

. . . . .

Those of you with children that you still drive around, okay, how many of you have been known to have to turn around and tell your child, Put your seat belt on before I stop this car and do something to you? Okay. So those of you that raised your hand that said you require your passengers to put the belt on before it moves, if your child is the passenger, sometimes they don't do that

had occurred weeks or months ago, perhaps memories would have been hazy about what inquiries had been made, but that was not the case. All three voir dires occurred within a five-day period—over three consecutive weekdays. This objection by counsel, the trial court's instruction on the types of questions to reserve for individual questioning, and the counsel's reference to the questions he had asked in the earlier voir dire identify the questions and types of questions at issue and clearly brought them to the trial judge's attention. Finally, during reargument of this case, Hyundai's counsel acknowledged the trial court knew which types of questions plaintiffs' counsel wanted to pursue: "In all honesty she had to know, and she had to know because of the questions that had gone on previously. . . ." Nevertheless, the Court concludes otherwise.

The Court holds that counsel's objection during the third voir dire and request to ask a group of questions regarding the belting of minors "much akin to what" he asked during the first voir dire does not preserve error. *See supra* note 5. During the third voir dire, the trial judge acknowledged that she knew counsel wanted to ask these types of questions about practices for seat-belting children. *See supra* note 4. Because counsel's reference to the group of questions asked in the first voir dire essentially provided the trial court with a list of questions dictated in the record only a few days earlier, it is unclear what the Court requires to preserve error

for restricting voir dire questioning. Compare the Court's reliance on *Babcock v. N.W. Memorial Hospital,* 767 S.W.2d 705, 707–08 (Tex.1989), holding litigants need not present a list of each intended voir dire question, with the Court's conclusion that the Vasquezes "did not frame additional inquiries" to preserve their complaint after the trial court revisited its discussion of questions related to seat-belting practices. 189 S.W.3d at 763. Perhaps the safest approach would be to provide the trial court with a list of questions, in writing or on the record, every time the trial court discusses the preclusion of a category of questions.

Because the Court sidesteps the harder issue posed by this case and fails to recognize the asserted error was preserved (as the record shows and the trial court and Hyundai acknowledge), I respectfully dissent.

Justice MEDINA, joined by Justice WAINWRIGHT and Justice JOHNSON, dissenting.

We can all agree that (1) litigants are entitled to fair and impartial jurors, (2) voir dire should not be used as an exercise to preview the verdict, and (3) trial courts must necessarily have broad discretion when conducting voir dire. That said, I do not agree that a trial court can totally divorce the legitimate search for bias and prejudice during voir dire from all material facts in the case. I also disagree with the

until you prod them or make them do it. Is that everyone's experience? Is that not the experience of any of you?
[PROSPECTIVE JUROR]: I have grandchildren that ride.
[PLAINTIFFS' COUNSEL]: Children or grandchildren. Thank you.
[PROSPECTIVE JUROR]: I tell them first thing to put them on, but sometimes they don't listen and I repeat myself.
[PLAINTIFFS' COUNSEL]: Okay. I imagine if you are leaving from your residence,

you sort of going through a stage of, you know, you pull out of your driveway and you are approaching that right turn or left turn onto the major street that you are going to travel on, and the whole trip from your driveway to the first turn to get you on the trip is where you are telling everybody, Do you have your belts on. Anyone have a remarkably different experience than that with children? All your kids always put their belt on immediately and always obey you?

Court's statement of the issue in this case because this case is not simply about the weight prospective jurors may attach to certain evidence but whether such jurors can follow their oath and the court's instructions. I believe that the issue is whether the trial court abused its discretion when it cut off questioning about seat belts; specifically questions about whether members of the venire would fairly consider all the evidence in the product liability and wrongful death suit, knowing that the decedent was not wearing her seat belt at the time of the accident.

The trial court here summarily dismissed two jury panels after approximately 60% of the first panel, and 35% of the second, initially indicated that they would not listen to any other evidence in the case upon learning that Amber was not wearing a seat belt at the time of the accident. Before beginning a third voir dire, the trial court devised a new format for questioning the panel, requiring that specific questions about seat belt attitudes be asked only during individual questioning of prospective jurors, and not to the panel as a whole, as had been done previously. When the time came to ask these questions individually, however, the trial court abandoned its plan, forbidding any further questions about seat belts. The Court agrees that this was error, but concludes that the error was not appropriately preserved for our review. I disagree and therefore respectfully dissent.

## I

In order to discover disqualifying bias or prejudice, we have said that litigants must be allowed reasonable latitude in examining prospective jurors on voir dire. *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex.1989). We recently noted, however, that a litigant may not, under the guise of bias and prejudice, ask prospective jurors to pledge or speculate about how specific evidence in the case may influence their verdict. *See Cortez v. HCCI–San Antonio, Inc.*, 159 S.W.3d 87, 94 (Tex. 2005) (attempts to preview a prospective juror's likely vote not permitted). Such questions, commonly referred to as commitment questions, are improper because they seek to commit prospective jurors to a particular view based on selected facts or evidence disclosed by counsel. *See Lassiter v. Bouche*, 41 S.W.2d 88, 90 (Tex.Civ. App.-Dallas 1931, writ ref'd). Their purpose is not to uncover a specific bias or prejudice but to identify prospective jurors who are impressed by the perceived strength or weakness of a particular piece of evidence.

The parties to this appeal strongly disagree about whether the rejected question here was an improper commitment question. The Court suggests that it was, and further submits that the Court of Criminal Appeals, which has had more experience in such matters, would agree with that assessment. But the subject of commitment questions remains a fertile area for debate despite the efforts of our Court of Criminal Appeals.

It was a sharply divided Court of Criminal Appeals that recently proposed a complex analysis for determining when voir dire questions seek an improper commitment from prospective jurors. In *Standefer v. State*, 59 S.W.3d 177 (Tex.Crim.App. 2001), the court described commitment questions as those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact. *Id.* at 179. The court noted, however, that not all commitment questions are improper. *Id.* at 181. "When the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard." *Id.* Thus, the court noted that it might be appropriate to ask in a murder case if the

prospective juror could consider probation because the law requires jurors in such cases to consider the full range of punishment, including probation. *Id.* Such a question would not be inappropriate because it merely commits the juror to follow the law. But when the law does not require the commitment, such that a juror would not be disqualified for cause if influenced by a particular fact or if possessed of a particular attitude or opinion, then the question would be improper. *Id.* at 181–82 ("for a commitment question to be proper, one of the possible answers to that question must give rise to a challenge for cause"). The court further cautioned that even when the question meets the challenge-for-cause requirement, the question may still be improper if it includes facts unnecessary to establish a challenge for cause. *Id.* at 182. Four members of the court disagreed with the analysis, complaining that "[t]he majority's attempt to clarify what constitutes a commitment question simply muddies the issue more by attempting to create a bright-line standard." *Standefer,* 59 S.W.3d at 186 (Johnson, J. dissenting).

Although I empathize with the Court of Criminal Appeals' efforts to define standards for this area of the law, I ultimately must agree with the dissent that *Standefer* provides no bright-line test for distinguishing an improper commitment question from a proper bias question. Nor can I propose an alternative test because I agree with the Court that the process "does not lend itself to formulaic management." 189 S.W.3d at 750 (quoting 4 ROY W. MC-DONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 21:19, at 116 (2d ed.2001)).

Clearly, a prospective juror who expresses disqualifying bias for or against a party or the litigation's subject matter cannot serve, but no single rule can explain the extent to which specific evidence in the particular case may be used to test for such bias. In one sense, the facts of the case are inconsequential because disqualifying bias or prejudice will exist irrespective of the strength or weakness of one's case. But bias and prejudice cannot be probed in a vacuum, and therefore some discussion of the evidence is inevitable. And it may occasionally happen that a material piece of evidence which strongly favors one party coincides with a bias or prejudice of a particular prospective juror. Because no one rule fits all circumstances, the burden must inevitably fall on the trial court to reasonably manage the voir dire, while guaranteeing the constitutional imperative of a fair trial. Thus, the overriding principle here is that the trial court is vested with broad discretion to control the voir dire, and its rulings should not be disturbed absent a clear abuse of that discretion. *Babcock,* 767 S.W.2d at 708 (citing *Texas Employers Ins. Ass'n v. Loesch,* 538 S.W.2d 435, 440 (Tex.Civ.App.-Waco 1976, writ ref'd n.r.e.)).

The question rejected by the trial court here inquired of the venire if they could be fair and impartial to the claim of the unbelted decedent. Admittedly, the question is vague although the Court finds it clear enough that the question's purpose was to preview the verdict rather than to probe for bias or prejudice. But the trial judge must have understood the question to touch upon disqualifying bias or prejudice at one time or she would not have struck the first two panels.

Before the third voir dire began, the trial judge indicated that she would again permit the Vasquezes to ask about seat belt bias during individual questioning of the venire. She later changed her mind, however, sustaining Hyundai's objection to the aforementioned question and stating: "We are not going to go any further into seat belts." The Vasquezes' attorney ob-

jected that the court's ruling prevented him from exploring a relevant bias. The trial judge acknowledged that she understood counsel's objection, but did not modify her ruling.

A disqualifying bias or prejudice exists whenever a prospective juror's opinions for or against a party or the subject matter of the litigation are so strong that the juror's decision will be based on those opinions rather than on the evidence presented at trial. *See Cortez v. HCCI–San Antonio,* 159 S.W.3d 87, 94 (Tex.2005); *see also* 1 WILLIAM V. DORSANEO III & EARL JOHNSON, JR., TEXAS CIVIL TRIAL GUIDE § 10.03[2], at 10–15 (2005) (citing *Shepherd v. Ledford,* 962 S.W.2d 28, 34 (Tex.1998)). The purpose of voir dire is to identify this type of bias or other disqualifying cause and, failing that, to make intelligent use of peremptory challenges. *Babcock,* 767 S.W.2d at 709. And although a trial court has discretion to impose reasonable limitations on voir dire and may control the form of any question seeking legitimate information, it does not have discretion to simply foreclose a proper line of questioning. *See Barajas v. State,* 93 S.W.3d 36, 38 (Tex.Crim.App. 2002) (abuse of discretion to prevent "a proper question about a proper area of inquiry"). As the Court observes, the trial court could not have denied the Vasquezes the right to ask the venire if anyone had a firm bias against product liability claims that would prevent them from considering the plaintiffs' claims. 189 S.W.3d at 761. Similarly, any prospective juror in an automobile product liability action who had such strong feelings about unbelted occupants as would preclude that juror from listening to all the evidence and following the court's instructions would be subject to challenge.

I do not disagree that the question rejected by the trial court, as it was phrased, was an impermissible attempt to pre-test the weight jurors would attach to Amber not being belted. However, this improper question did not authorize the trial court to foreclose the entire area of properly-phrased seat belt usage questions. As the record reflects, there were (and are) a number of ways to pose the subject to the jury. *See* 119 S.W.3d at 851–54. Not all of them are improper commitment or pre-testing questions. But, when a trial court tells a party's attorney that there will be no further inquiry into a particular subject matter, as was done in this case, that party should not be prejudiced by taking the court's ruling at face value.

A court abuses its discretion when it renders an arbitrary decision, lacking support in the facts and circumstances of the case. *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997); *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex. 1985). The trial court controls the process, *Cortez,* 159 S.W.3d at 92, and may in its discretion reject questions which pose unnecessary factual detail or otherwise attempt to fish for a prospective juror's reaction to evidence, but it abuses its discretion when its rulings are arbitrary and go beyond that necessary to protect the integrity of the process. The trial court could have required the Vasquezes' question to be more precisely drawn, but the court did not have discretion to forbid the area of inquiry altogether. *Cf. Howard v. State,* 941 S.W.2d 102, 108 (Tex.Crim.App. 1996) (litigant must rephrase or waive an improperly phrased question where trial court places no absolute limitation on the underlying substance of the voir dire). The trial court accordingly abused its discretion when it cut off any further questions about seat belts.

The Court, however, concludes that the Vasquezes' objection to this ruling was not specific enough to preserve error. But rules are not traps. *See McConnell v.*

*Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 346 (Tex.1993) (Hecht, J. dissenting) ("When rules are divorced from the basic principles they effectuate, the resulting structure is deformed and arbitrary, and its purpose—achieving justice—is thwarted."). Preservation rules exist to inform courts of error in a plain and timely manner so that they can make informed rulings. *See, e.g., State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992). That happened in this case when the court acknowledged that it understood the basis for the Vasquezes' objection and ruled that it would permit no further questions on seat belts. Moreover, Hyundai's counsel acknowledged during argument to this Court that the trial court was fully apprised of the types of questions the Vasquezes wanted to pursue from the preceding voir dires.

## II

Having concluded that the trial court erred in restricting voir dire in this case, I must next consider whether such error was harmful. Hyundai argues that any error was harmless because the Vasquezes had a fair opportunity to discover bias or prejudice by questioning the panel about their personal seat belt habits. Moreover, Hyundai submits that the court of appeals erred in presuming harm rather than considering whether the error either "probably caused rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a); *see also* TEX. R. APP. P. 61.1(a).

The Vasquezes respond that general questions regarding personal seat belt habits were too broad to be useful in uncovering an existing bias against an injured party who did not use her seat belt. They further respond that presumed harm is the appropriate analysis when a trial court errs in seating a jury during voir dire.

First, I agree that questions about personal seat belt habits were not a reasonable substitute for a direct question about seat belt non-use bias. Just as our Court of Criminal Appeals has cautioned against injecting unnecessary specifics into voir dire questioning, so too has the Supreme Court condemned another extreme—the use of such general inquiries as to deny a party's right to an adequate voir dire. *Morgan v. Illinois*, 504 U.S. 719, 734–35, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). Too little information in the question can be as damaging to the process as too much. *See id.* at 729, 112 S.Ct. 2222 ("part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors"). Without some connection to the case to "lay bare the foundation of [a] challenge for cause," the right not to be tried by jurors who harbor a disqualifying bias, or inability to follow the law, is "nugatory and meaningless." *Id.* at 733–34, 112 S.Ct. 2222.

Next, regarding harm analysis in this type of case, we said in *Babcock* that the trial court's erroneous refusal to permit a party to ask an appropriate question about subject matter bias was harmful because it denied that party's "constitutional right to trial by a fair and impartial jury." *Babcock*, 767 S.W.2d at 709. For this proposition, we cited *Texas & Pacific Ry. v. Van Zandt*, 159 Tex. 178, 317 S.W.2d 528, 531 (1958), in which we said that the "mere denial [of the constitutional right of trial by jury] raise[d] an inference of probable harm." Similarly, in another case in which the jury was seated in an improper manner, we adopted the following harmless error analysis as our own:

It would be impossible for appellant to demonstrate with any degree of certainty that he in fact suffered injury as a

result of the manner in which the jury panel was selected, and he has made no effort to show specific harm or injury, but we think that harm within contemplation of the so-called harmless-error rule ..., must be presumed in the circumstances, if such rule or rules can be said to be applicable to the situation at all. Approval of the judgment would be tantamount to denying appellant his constitutional right of a trial by jury, because trial by a jury that has at least been selected in substantial compliance with law is what is guaranteed him by both the federal and our state constitutions.

*Heflin v. Wilson,* 297 S.W.2d 864, 866 (Tex.Civ.App.-Beaumont 1956, writ ref'd); *cf. Rivas v. Liberty Mut. Ins. Co.,* 480 S.W.2d 610, 612 (Tex.1972) (harm not presumed when error is procedural and does not violate fundamental right of trial by jury).

An improperly impaneled jury is also akin to the denial of one. In this latter situation, we have held that the failure to grant a jury trial, when properly requested, is harmless only when "the record shows that no material issues of fact exist and an instructed verdict would have been justified." *Halsell v. Dehoyos,* 810 S.W.2d 371, 372 (Tex.1991); *see also Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 667 (Tex.1996). More recently, we noted that an appellate court must presume harm when an objectionable person is erroneously included on a jury because the court "cannot know for certain that his inclusion did not affect the verdict." *Cortez,* 159 S.W.3d at 91.

Just as in *Cortez,* it is impossible to know here whether the verdict would have been different had the jury been seated properly. But as in other cases involving the right to trial by jury, our harm analysis must reflect the importance our justice system accords this precious right. *See*

*Gen. Motors Corp. v. Gayle,* 951 S.W.2d 469, 476 (Tex.1997) (right to jury trial is "one of our most precious rights"); *see also McDaniel v. Yarbrough,* 898 S.W.2d 251, 253 (Tex.1995) ("Denial of the constitutional right to trial by jury constitutes reversible error."). I conclude then that the court of appeals correctly relaxed its harmless error analysis under the circumstances of this case.

## III

Finally, I find it highly improbable that all of the prospective jurors who responded affirmatively to the seat belt bias questions during the failed voir dires actually harbored disqualifying bias or prejudice against unbelted claimants. It is more likely that their responses were the result of confusion or misunderstanding as the trial court itself acknowledged after the second voir dire. A prospective juror does not demonstrate disqualification merely by raising his or her hand in response to a question asking about bias or prejudice. The court or parties should ordinarily follow up to confirm or dispel any initial notion of disqualification. *See Cortez,* 159 S.W.3d at 93 ("If the initial apparent bias is genuine, further questioning should only reinforce that perception; if it is not, further questioning may prevent an impartial veniremember from being disqualified by mistake.").

The voir dire in this case occurred before our decision in *Cortez,* which may explain the court's management of the process. No attempt was made to discover what the prospective jurors actually intended when 29 of them, about 60% of the first panel, raised their hands in response to the seat belt question and when 18 of them, about 35% of the second panel, responded similarly. 189 S.W.3d at 748 n. 10. After the second voir dire, the court recognized the problem: "The problem ...

is I was automatically excluding some people who may have [mis]understood [the seatbelt] questions ..." The court's solution to that problem was to permit individual questioning of the prospective jurors, but it abruptly abandoned that plan before it was ever implemented. Instead, the court solved its problem of "automatic exclusion" by simply forbidding any further inquiry into seat belts. In *Cortez*, however, we admonished that "trial judges must not be too hasty in cutting off examination that may yet prove fruitful." *Cortez*, 159 S.W.3d at 92.

Because I believe the trial court's solution of forbidding further inquiry into the issue of seat belt bias was arbitrary and made without reference to the principles which should have guided the court's discretion, I would affirm the judgment of the court of appeals and remand this case for trial. Because the Court does not, I dissent.