# NO. 12-12-00330-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KEVIN GREGORY KATHRINE,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Kevin Gregory Kathrine appeals his conviction for aggravated sexual assault of a child for which he was sentenced to imprisonment for forty years. Appellant contends in one issue that the presumption of innocence was tainted. We affirm.

## BACKGROUND

Appellant was indicted for two counts of aggravated sexual assault of a child and two counts of indecency with a child. He pleaded not guilty and requested a jury trial. Dale Summa, an assistant district attorney in Angelina County, represented the State of Texas at trial, and Appellant was represented by Lufkin attorney Bill Agnew. The following is an excerpt from the State's voir dire:

> MR. SUMMA: I'm just about to finish up my questioning. I want to remind you-all that nobody can think of all the questions to ask. Okay? Mr. Agnew's going to have a chance to ask some questions here in just a minute. Will probably be a little bit different than mine, different variation. Kind of the same and maybe a different variation. But that's fine. Nobody can think of all the questions to ask. And occasionally what happens is after the jury's selected and their names are called to go in the jury box, somebody will say, "You know, there's something I really wanted to tell you about me serving on this jury. But since nobody really asked the question, I wasn't sure when to speak up." Well, in a sense, this is kind of like getting married. Speak now or forever hold your peace. If there's some question or problem, maybe after talking about it there's not a problem. But once you're in the jury box and chosen, then it becomes a little bit harder to fix the problem. You know what I mean? So if you think there's something the judge or Mr. Agnew or

myself ought to know about you serving on this jury, let us know, particularly if it causes you some concern if you don't think you could be fair for both sides at this point in time.

*(Show of hands)*

MR. SUMMA: Okay. Mr. Ward.

VENIREPERSON 24: Well, I guess I'm bad about jumping to conclusions.

MR. SUMMA: Uh-huh.

VENIREPERSON 24: When the defendant walked in, I said right away he looked like a pedophile, to me.

MR. SUMMA: Okay. Well, I think I probably need to visit with you at the bench, then. Okay?

VENIREPERSON 9: And I was sort of...

MR. SUMMA: Well –

VENIREPERSON 9: Not –

MR. SUMMA: -- I'll make a note of that, Ms. Mettlen. But you ever hear the term that you can't always tell a book by its cover?

THE VENIRE: Right. (Moving heads up and down).

MR. SUMMA: Sometimes you can, but not always.  And what you're supposed to judge this case based on is the evidence. Okay? And if you have some concerns that you can't judge this case based on the evidence and the reasonable inferences from it, that is something that we do need to know.  And perhaps, Ms. Mettlen and Mr. Ward, maybe we'll talk about this a little bit after Mr. Agnew's questioning.

After Summa had completed the State's questioning of the venirepersons, Agnew began his portion of the voir dire with the following:

MR. AGNEW:  Mr. Ward, let me ask you something. Why do you think I have a ponytail, if you had to guess?

VENIREPERSON 24: (Inaudible).

MR. AGNEW: What do you think it says about me that I have a ponytail? What do you think of when you see a guy like me standing up here as a lawyer with a ponytail? What do you think of me?

VENIREPERSON 24: Probably think you rode a motorcycle.

MR. AGNEW: Okay. And I say this because I want to sort of show you something. Years ago, I had friends of mine whose daughters, as they were going from kind of being little girls to teenage girls and had long hair, they would cut their hair off and donate it to Locks of Love. I also come from a long line of men who are really tall and really skinny but bald.  So, to me, I was like, "You know, hey. I could do that." I mean, I've got a good head of hair. I can grow my hair for Locks of

Love. And the reason I say that is you commented about my client. I mean, there was a long time people -- it would get back to me that people would refer to me as the long-haired hippy lawyer with a beard. And I know that that's not a compliment. But it's also not true because -- the facial hair, I can't give you any real good explanation for why I have that that has any good cause or anything. But I'm about as middle of the road as they come. And a lot of people mistake me for being something different than that because of the way that I look. And I just wanted to talk to you about that.

Following this, Agnew began the process of questioning the remaining venirepersons. Toward the end of his questioning, the following exchange occurred:

MR. AGNEW: Who here have family or friends in law enforcement? Raise your hand and hold it up for me. If that affects your ability to be a fair and impartial juror, keep your hand up. If it doesn't affect you, put it down.

*(Show of hands)*

MR. AGNEW: Mr. Ward, you think it does?

VENIREPERSON 24: Well, yeah. I had -- yeah.

MR. AGNEW: Okay. Was there anyone over here that felt the same way as Mr. Ward?

THE VENIRE: (No response).

Following Summa's and Agnew's questioning of the jury, the trial court immediately granted Agnew's challenges for cause to venirepersons 9 and 24 and Summa's challenges for cause as to venirepersons 3 and 26. A twelve person jury was then empaneled. The jury found Appellant guilty of one count of aggravated sexual assault of a child and sentenced him to forty years of imprisonment. This appeal followed.

### COMMENTS DURING VOIR DIRE

In his sole issue, Appellant contends that the trial court erred in failing to declare a mistrial or take any remedial measure sua sponte when egregiously harmful comments were made by a prospective juror during voir dire. Appellant concedes that he did not request the court to instruct the venire to disregard venireperson 24's statement that Appellant "looked like a pedophile, to me" or move for a mistrial. Appellant contends, however, that this statement was structural error because it tainted the presumption of innocence, affecting the fairness of the proceedings. Therefore, he urges, the error can be raised for the first time on appeal. As

3

authority to support this argument, Appellant cites ***Blue v. State***, 41 S.W.3d 129 (Tex. Crim. App. 2000). There, a plurality of our court of criminal appeals determined that comments of a trial judge which tainted Appellant's presumption of innocence in front of the venire constituted fundamental error of constitutional dimension and required no objection. ***Id***. at 132. The State responds that Appellant waived this issue on appeal by failing to raise the issue in the trial court during voir dire.

## Applicable Law

Ordinarily, to preserve error for appellate review, the complaining party must make a timely request, objection, or motion that states the grounds therefor, and obtain a ruling. TEX. R. APP. P. 33.1(a)(1). However, if the alleged error of which the defendant complains is fundamental error affecting substantial rights, no objection is necessary to preserve error. TEX. R. EVID. 103.

The bill of rights in the Texas Constitution guarantees litigants a right to trial by a fair and impartial jury. ***Hyundai Motor Co. v. Vasquez***, 189 S.W.3d 743, 749 (Tex. 2006). The voir dire process is designed to ensure, to the fullest extent possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it. ***Armstrong v. State***, 897 S.W.2d 361, 363 (Tex. Crim. App. 1995). Voir dire inquiry into potential juror bias and prejudice thus is proper to determine whether jurors are qualified by statute and to seek information that allows counsel to intelligently exercise their peremptory strikes. ***Hyundai***, 189 S.W.3d at 750.

> Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality. Prejudice is more easily defined, for it means prejudgment, and consequently embraces bias; the converse is not true.

***Id***. at 751.

A defendant's complaint concerning the voir dire process may take three forms: (1) a timely, specific objection, (2) a request for an instruction to disregard, and (3) a motion for a mistrial. ***Young v. State***, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). The traditional and preferred procedure for a party to voice its complaint has been to seek these forms of relief in sequence – that is, (1) to object when it is possible, (2) to request an instruction to disregard if the prejudicial event has occurred, and (3) to move for a mistrial if a party thinks an instruction to disregard was not sufficient. ***Id***. An instruction to disregard attempts to cure any harm or

4

prejudice resulting from events that have already occurred. *Id*. Where the prejudice is curable, an instruction eliminates the need for a mistrial, thereby conserving the resources associated with beginning the trial process anew. *Id*. The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been "cured" by such an instruction. *Id*. at 70.

**Analysis**

The purpose of the voir dire examination is to expose any bias or interest of the prospective jurors that might prevent full consideration of the evidence presented at trial. *Armstrong v. State*, 897 S.W.2d 361, 369 (Tex. Crim. App. 1995) (en banc). In fact, Agnew specifically asked, after venireperson 24's statement, whether anyone "other than the people who have already spoken" was unable to wait until after hearing all the evidence to decide whether Appellant was guilty. He later asked if any of the venirepersons had family or friends in law enforcement and, if so, whether that would affect the person's ability to be a fair and impartial juror. Only venireperson 24 responded in the affirmative. Agnew then specifically asked if any other venirepersons felt the same way, and there was no response. Appellant thus took advantage of his opportunity during voir dire to question the venirepersons about whether they had the same mindset as venireperson 24 and if it would affect anyone's deliberations after hearing the evidence. *See Draughon v. State*, 831 S.W.2d 331, 337 (Tex. Crim. App. 1992). None, other than venireperson 9, indicated that it would.

In the present case, the system worked as it was intended to. Appellant was able to discover the prejudices of venirepersons 24 and 9 and use his challenges for cause to remove them from the jury panel. *See Hyundai*, 189 S.W.3d at 750. Appellant cites no cases in which a statement similar to that made by venireperson 24 was held to be fundamental error. And we have been unable to locate any such cases. Further, *Blue v. State*, which is cited by Appellant, relates to the tainting of the presumption of innocence by a trial judge's comments. A judge is duty-bound to perform his judicial duties without bias or prejudice. Tex. Code Jud. Conduct, Canon 3B(5), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (West 2013). And a judge shall not in the performance of judicial duties, by words or conduct, manifest bias or prejudice. *Id*. Canon 3B(6). The duties of a venireperson do not rise to the same level as the judge conducting the trial. Therefore, *Blue* is inapplicable here.

Based upon our review of the record, we hold that the statement by venireperson 24 did not taint the presumption of innocence, and therefore no fundamental error occurred. Because Appellant did not object to the statement at trial, he has forfeited any complaint about the voir dire process on appeal. *See **Young***, 137 S.W.3d at 70. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, the judgment of the trial court is ***affirmed***.


**JAMES T. WORTHEN**
Chief Justice


Opinion delivered August 29, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)


6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 29, 2013**

**NO. 12-12-00330-CR**

**KEVIN GREGORY KATHRINE,**
Appellant
**V.**
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2012-0303)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*