

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00056-CV

_____

IN RE THE COMMITMENT OF ANTHONY BERNARD WILEY

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 186,685-C

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

In 1995, Anthony Bernard Wiley pled guilty to aggravated sexual assault[1] and to burglary with intent to commit aggravated sexual assault[2] and was sentenced to twenty-five years' imprisonment. As the end of Wiley's sentence approached, the State filed a petition in the Wichita County[3] district court to have him civilly committed for treatment and supervision as a sexually violent predator under Chapter 841 of the Texas Health and Safety Code.[4] After a jury found that Wiley was a sexually violent predator, the trial court entered its final judgment and an order of commitment that Wiley be civilly committed for treatment and supervision by the Texas Civil Commitment Office.

In this appeal, Wiley claims reversible error in (1) excluding a portion of Wiley's testimony, (2) prohibiting Wiley from asking proper voir dire questions, and (3) permitting the State to make an impermissible burden-shifting comment during closing argument. Because we find reversible error in prohibiting Wiley from asking a proper voir dire question, we will reverse the trial court's judgment and remand this case for a new trial.

During voir dire, Wiley sought to ask the venire, "[I]s there anybody here who would be like, you know, there's certain types of victims if I hear about I know I'm not going to be able to

---

[1]*See* TEX. PENAL CODE ANN. § 22.011 (West Supp. 2018).

[2]*See* TEX. PENAL CODE ANN. § 30.02(d) (West Supp. 2018).

[3]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[4]*See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.151 (West 2017 & West Supp. 2018).

be fair in these types of cases?" The State objected, and, after an off-the-record discussion at the bench, the trial court sustained the objection and instructed Wiley to "move on." At the conclusion of voir dire, but before the jury had been selected and seated, Wiley told the trial court:

> I just wanted to state so it's clear that the question I was going to ask is if there's anybody here who can't be fair and impartial if they hear evidence about an elderly victim, specifically 65 or older. And I wasn't -- the Court did not allow me to go into that. And the other question I was asking was what types of victims would prevent perspective jurors from being fair and impartial in these cases. And I anticipated that they would indicate to the second question, elderly victims in response to the first question. If they did indicate they could not be fair and impartial then I would have challenges for cause, but since I was not allowed to ask those questions, I was not afforded the opportunity to intelligently exercise my peremptory strikes.

Wiley and the State also advised the trial court of caselaw in civil commitment cases that allows voir dire questions to determine whether jurors can be fair and impartial if they hear evidence regarding child victims, pedophilia, and homosexuality. Nevertheless, the trial court sustained the State's objection to the question.

In his second issue, Wiley argues that the trial court abused its discretion in not allowing him to ask the venire if anybody could not be fair and impartial if they heard evidence about an elderly victim, specifically sixty-five or older. Wiley contends that the trial court's actions prevented him from asking a question that went to the potential jurors' ability to give him a fair trial, citing *In re Commitment of Hill*, 334 S.W.3d 226 (Tex. 2011). The State argues that the question was improper because it sought to determine the weight prospective jurors would give to the age of one of Wiley's victims, citing *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743 (Tex. 2006).

"Litigants have the right to question potential jurors to discover biases and to properly use peremptory challenges." *Hill*, 334 S.W.3d at 228 (citing *Hyundai Motor Co.*, 189 S.W.3d at 749–50). This right is subject to reasonable control by the trial court. *Id.* at 228–29. We review a trial court's refusal to allow a voir dire question for abuse of discretion. *Id.* at 229. "[A] court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges." *Id.* (quoting *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989)).

The Civil Commitment of Sexually Violent Predators Act provides for the civil commitment of a person who is nearing the end of a sentence for a sexually violent offense and who may be a repeat sexually violent offender. TEX. HEALTH & SAFETY CODE ANN. §§ 841.001, 841.021(a), (a-1), (c) (West 2017). To obtain a civil commitment, the State must show that the person "(1) is a repeat sexually violent offender;[5] and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.003(a) (West 2017). A "behavioral abnormality" is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes

---

[5]One of the ways to show the defendant is a repeat sexually violent offender is to show that he has been convicted of more than one sexually violent offense and that a sentence was imposed for at least one of the offenses. TEX. HEALTH & SAFETY CODE ANN. § 841.003(b) (West 2017).

4

a menace to the health and safety of another person." TEX. HEALTH & SAFETY CODE ANN. § 841.002(2) (West 2017).

A penitentiary packet establishing that Wiley had been convicted of more than one sexually violent offense was admitted at a pretrial hearing for the purposes of trial. Consequently, much of the trial focused on Wiley's sexual history, which formed the basis of the State's psychologist's opinion that Wiley suffers from a behavioral abnormality. The evidence showed that the victim of Wiley's 1995 convictions was a sixty-eight-year-old woman. Jason Dunham, a forensic psychologist, testified that his review of the records of the 1995 offenses showed that, during the burglary, Wiley brutally beat the woman, blindfolded her, tied her hands and feet together, and sexually assaulted her with a knife to her throat. Dunham diagnosed Wiley as a sexual sadist who is aroused by violence and by the pain and suffering of another person and cited, in particular, the extreme and unnecessary violence Wiley committed against his sixty-eight year old victim as evidence of that diagnosis. He pointed to the ages of Wiley's assault victims, which ranged from twenty to sixty-eight years old, as evidence of Wiley's increased level of sexual deviancy. Based on Wiley's sexual history, Dunham opined that Wiley suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

In *Hill*, the defendant sought to determine whether potential jurors could be able to give a fair trial to a person they believed to be a homosexual, but he was instructed by the trial court to terminate the line of questioning and to not ask a direct question about Hill's homosexuality. *Hill*, 334 S.W.3d at 228. On appeal, the Texas Supreme Court noted that

> Hill's sexual history was part of the State's proof of his alleged behavioral abnormality, yet the trial court refused questioning that went to the potential jurors'

5

> ability to give him a fair trial. This prevented Hill from discovering the potential jurors' biases so as to strike them for cause or intelligently use peremptory challenges.

*Id.* at 229 (citing TEX. GOV'T CODE ANN. § 62.105(4) (West 2013) (listing "bias or prejudice . . . against a party in [a] case" as grounds for disqualifying a juror)). Consequently, the court held that the trial court had abused its discretion by suspending the line of questioning and that such error was harmful. *Id.* at 229–30 (finding abuse of discretion and reversing and remanding the case to the trial court).

Relying on *Hill*, the Beaumont Court of Appeals held that a trial court abused its discretion when it refused to allow the defendant to ask the venire, "Would anybody on the first row find it hard to give someone who has been diagnosed by an expert as a pedophile a fair trial." *In re Commitment of Kalati*, 370 S.W.3d 435, 440 (Tex. App.—Beaumont 2012, pet. denied). In rejecting the State's argument that the question was a commitment question, the court stated:

> The substance of the question posed by counsel was probative of the potential jurors' prejudices towards persons diagnosed with pedophilia, and the question that was being posed did not ask the members of the venire for their opinions about the strength of the evidence or suggest what weight they would give to the evidence of Kalati's psychiatric diagnosis.

*Id.* at 441. The court went on to note that, at least in civil commitment cases, "[t]he broad language in *Hill* allows counsel to discuss with the jury the subject's sexual history relevant to the subject's behavioral abnormality, so that counsel may discover the potential juror's biases." *Id.* (citing *Hill*, 334 S.W.3d at 229). Likewise, other courts of appeal have held that it is an abuse of discretion, and that such error is harmful, when the defendant in a civil commitment case is prevented from inquiring into potential jurors' biases regarding the specific sexual history of the defendant. *See*

6

*In re Commitment of Porter*, No. 11-18-00015-CV, 2018 WL 6544751, at \*1–2 (Tex. App.—Eastland Dec. 13, 2018, no pet. h.) (mem. op.) (bestiality); *In re Commitment of Miller*, No. 09-11-00450-CV, 2012 WL 3031160, at \*1–3 (Tex. App.—Beaumont July 26, 2012, pet. denied) (mem. op.) (offense against a child).

The State seeks to distinguish *Hill* and *Kalati*, arguing that homosexuality and pedophilia were diagnoses and reasons for the experts' opinions of behavioral abnormality. In *Hill*, the Texas Supreme Court stressed that it was the defendant's *sexual history* that was part of the State's proof of the behavioral abnormality prong of its case, which entitled Hill to discover the potential jurors' biases. Contrary to the State's contentions in its brief, Dunham's testimony showed that the advanced age of Wiley's sexual assault victim was important to his opinion regarding Wiley's behavioral abnormality. Further, in *Miller*, no diagnosis was involved. Rather, the voir dire question sought to determine whether the potential jurors could set aside any bias if the defendant had committed sexual offenses against a child. *Miller*, 2012 WL 3031160, at \*1.

Since Wiley's sexual history was part of the State's proof of his behavioral abnormality, we find an abuse of discretion in preventing Wiley from inquiring into the ability of the potential

jurors to give him a fair trial considering that history, and that the error was harmful. *See Hill*, 334 S.W.3d at 229–30; *Kalati*, 370 S.W.3d at 441. We sustain this issue.[6]

For the reasons stated, we reverse the trial court's judgment and order of commitment, and we remand this case to the trial court for a new trial.

Josh R. Morriss, III
Chief Justice

Date Submitted:     January 23, 2019
Date Decided:       February 8, 2019

---

[6]Because Wiley's other issues would not provide him greater relief, we need not address them.